**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABRAHAM LIZAMA, MARC DOTEN, | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No. |
| | ) | |
| vs. | ) | Division: |
| | ) | |
| H&M HENNES & MAURITZ LP, | ) | |
| Serve: Registered Agent | ) | JURY TRIAL DEMANDED |
| CSC-LAWYERS INCORPORATING | ) | |
| SERVICE COMPANY | ) | |
| 221 Boliver St. | ) | |
| Jefferson City, MO 65101 | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs Abraham Lizama and Marc Doten, on behalf of themselves and all others similarly situated, through their attorneys, and brings this action against Defendant H&M Hennes & Mauritz LP (hereinafter referred to as "Defendant" or "H&M"); and, upon information and belief, except as to the allegations that pertain to themselves, which are based upon personal knowledge, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on their own behalf and as a representative of a class of persons similarly situated who purchased H&M's "Conscious Choice" Collection Products for personal, family, or household purposes.

2.      In recent years, consumers have become significantly more aware of and sensitive to the impact of clothing and household products on the environment.  Consumers seek, and will

pay a premium for, products that are responsibly made, including products that will not negatively affect the environment.

3.      As a result, demand has increased for "green" products that are sustainable and environmentally friendly.

4.      H&M develops, manufacturers, markets, distributes, and sells a variety of personal, family, or household products in its self-proclaimed sustainable clothing line called the "Conscious Choice" Collection:  Women's Products (identified in Exhibit A attached hereto), Men's Products (identified in Exhibit B attached hereto), Kids' Products (identified in Exhibit C attached hereto), and Baby Products ((identified in Exhibit D attached hereto) (hereinafter the "'Conscious Choice' Collection Products" or the "Products").[1]

5.      This action seeks to remedy the unlawful, unfair, deceptive, and misleading business practices of H&M with respect to the marketing and sale the Products, which are sold throughout the State of Missouri, the State of California, and the United States.

6.      In an effort to increase profits and to gain an advantage over its lawfully acting competitors, H&M falsely and misleadingly markets and labels the Products "Conscious Choice" with a green hangtag that claims that the Products are a "Conscious Choice," more "sustainable" and environmentally friendly.  Contrary to these representations, the Products are plainly ***not*** a "Conscious Choice," more "sustainable" and environmentally friendly because the Products are not made from sustainable and environmentally friendly materials.  This marketing and labeling deceives consumers into believing that they are receiving "conscious," more sustainable, and environmentally friendly Products, but H&M's Products do not live up to these claims.

---

[1] Plaintiffs reserve the right to amend this Complaint to include any additional items sold by H&M that are within the scope of this Complaint.

7.      Conscious of consumers' increased interest in more "green" products that are more sustainable and environmentally friendly and willingness to pay more for products perceived to meet this preference, H&M misleadingly, illegally, and deceptively seeks to capitalize on these consumer "green" trends.

8.      Plaintiffs purchased the Products in reliance on H&M's representations that these Products are a "Conscious Choice," more "sustainable," and environmentally friendly.  They would not have purchased the Products if they had known that they were not made from sustainable and/or environment friendly materials.

9.      Consumers expect products that are marketed as a "Conscious Choice," more "sustainable," and environmentally friendly to be made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment.

10.     Plaintiffs and the Class reasonably believed H&M's false and misleading representations.  H&M knew or reasonably should have known that its representations regarding the Products were false, deceptive, misleading, and unlawful under Missouri law, California law, and common law.

11.     H&M misrepresented, and/or concealed, suppressed, or omitted material facts in connection with the sale, distribution, and/or advertisement of the Products.

12.     Plaintiffs and the Class Members paid a premium for the Products over comparable products that did not purport to be a "Conscious Choice," more "sustainable," and environmentally friendly.  Given that Plaintiffs and Class Members paid a premium for the Products based on H&M's representations that they are a "Conscious Choice," more sustainable, and environmentally friendly, Plaintiffs and the Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

3

13.     Plaintiffs brings claims against H&M individually and on behalf of the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period") for (1) violation of the Missouri Merchandising Practices Act ("MMPA"), § 407.010 *et. seq.*; (2) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (3) violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq.*; (4) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*; (5) unjust enrichment; (6) negligent misrepresentation; and (7) fraud.

## PARTIES

14.     At all relevant times, Plaintiff Abraham Lizama was and is a citizen of the State of Missouri, residing in St. Louis County.  During the Class Period, Plaintiff Lizama has purchased H&M Products for personal, family, or household use from an H&M store in St. Louis County.  Plaintiff Lizama's purchases include, without limitation, H&M Conscious Choice Collection Knit Sweater Turquoise in the state of Missouri.  Accordingly, Plaintiff Lizama has been injured as a result of Defendant's unlawful conduct alleged herein.

15.     Plaintiff Lizama purchased the H&M Products because he saw the labeling, advertising, the Defendants' website, and read the packaging, which represented that the Products were a "Conscious Choice," more "sustainable, and environmentally friendly.  Plaintiff Lizama relied on Defendant's false, misleading, and deceptive representations that the Products are a "Conscious Choice," more "sustainable, and environmentally friendly.  He understood this to mean that the Products were made from sustainable and/or environment friendly materials that are less harmful and more beneficial to the environment.  Plaintiff Lizama would not have purchased the Products at all, or would have been willing to pay a substantially reduced price for

4

the H&M Products, if he had known that they were not made from sustainable and/or environment friendly materials that are less harmful and more beneficial to the environment. Plaintiff Lizama would purchase the Products in the future if Defendant changed the composition of the Products so that they conformed to their "Conscious choice," more "sustainable," and environmentally friendly marketing, packaging, and labeling, or if the packages and labels were corrected and he could trust that they were correct.

16.     At all relevant times, Plaintiff Marc Doten was and is a citizen of the State of California, residing in Los Angeles County.  During the Class Period, Plaintiff Doten has purchased H&M Products for personal, family, or household use from an H&M store in Arcadia, CA.  Plaintiff Doten's purchases include, without limitation, H&M Conscious Choice Collection Double-breasted Satin Blouse Light Beige/Floral in the state of California.  Accordingly, Plaintiff Doten has been injured as a result of Defendant's unlawful conduct alleged herein.

17.     Plaintiff Doten purchased the H&M Products because he saw the labeling, advertising, the Defendants' website, and read the packaging, which represented that the Products were a "Conscious Choice," more "sustainable, and environmentally friendly.  Plaintiff Doten relied on Defendant's false, misleading, and deceptive representations that the Products are a "Conscious Choice," more "sustainable, and environmentally friendly.  He understood this to mean that the Products were made from sustainable and/or environment friendly materials that are less harmful and more beneficial to the environment.  Plaintiff Doten would not have purchased the Products at all, or would have been willing to pay a substantially reduced price for the H&M Products, if he had known that it was not made from sustainable and/or environment friendly materials that are less harmful and more beneficial to the environment.  Plaintiff Doten would purchase the Products in the future if Defendant changed the composition of the Products

so that they conformed to their "Conscious choice," more "sustainable," and environmentally friendly marketing, packaging, and labeling, or if the packages and labels were corrected and he could trust that they were correct.

18.     Defendant H&M Hennes & Mauritz LP is a New Jersey corporation with its principal place of business in Secaucus, NJ.  H&M is a multinational clothing company built on direct-to-consumer sales.  H&M's Products are sold to consumers through its website and its brick-and-mortar stores.  H&M conducts business, including advertising, distributing, and/or selling the H&M Products, throughout Missouri, including the County of St. Louis, Missouri, California, and the United States.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiffs, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

20.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in Missouri or otherwise intentionally did avail themselves of the markets within Missouri, through their sale of the Product in Missouri and to Missouri consumers.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendant regularly conduct business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

**FACTUAL ALLEGATIONS**

22.     In recent years, consumers have become increasingly concerned about buying clothing that is more sustainable and environmentally friendly.  Consumers have poured billions of dollars into the "green" and environmentally friendly clothing market.

23.     In response to consumers' desire for more sustainable and environmentally friendly clothing products, many companies "greenwash" their products by deceptively claiming that their clothing is made from materials that are more sustainable and environmentally friendly. Unfortunately, rather than creating more sustainable and environmentally friendly clothing products that consumers desire, many companies, like H&M, have chosen instead to "greenwash" their products through deceptive labeling, suggesting and outright stating that their clothing products are more sustainable and environmentally friendly when, in fact, they are not made from sustainable and environment friendly materials.  Thus, the clothing products give the false and misleading impression that they are less harmful or more beneficial to the environment than they really are.

**The Federal Trade Commission "Green Guides"**

24.     Recognizing this problem, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[2]

25.     The Green Guides state that "[t]he following general principles apply to all environmental marketing claims, including those described in §§ 260.4 – 16.  Claims should comport with all relevant provision of these guides."  16 C.F.R. § 260.3.  Further, the Green Guides' general principles state:

(c) **Overstatement of environmental attribute:** An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or

---

[2] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.

benefit. **Marketers should not state or imply environmental benefits if the benefits are negligible.**

(d) Comparative claims: Comparative environmental marketing claims should be clear to avoid consumer confusion about the comparison. Marketers should have substantiation for the comparison.

**Example 4:[3]  A product is advertised as "environmentally preferable." This claim likely conveys that the product is environmentally superior to other products. Because it is highly unlikely that the marketer can substantiate the messages conveyed by this statement, this claim is deceptive.** The claim would not be deceptive if the marketer accompanied it with clear and prominent language limiting the environmental superiority representation to the particular attributes for which the marketer has substantiation, provided the advertisement's context does not imply other deceptive claims. For example, the claim "Environmentally preferable: contains 50% recycled content compared to 20% for the leading brand" would not be deceptive.

*Id.*

26.     In addressing "General Environmental Benefit Claims," the Green Guides state:

(a) **It is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit.**

(b) Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings.  In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits **and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.**

(c) Marketers can qualify general environmental benefit claims to prevent deception about the nature of the environmental benefit being asserted.  To avoid deception, marketers should use clear and prominent qualifying language that limits the claim to a specific benefit or benefits.  Marketers should not imply that any specific benefit is significant if it is, in fact, negligible.  If a qualified general claim conveys that a product is more environmentally beneficial overall because of the particular touted benefit(s), marketers should analyze trade-offs resulting from the benefit(s) to determine if they can substantiate this claim.

(d) Even if a marketer explains, and has substantiation for, the product's specific environmental attributes, this explanation will not adequately qualify a general

---

[3] The Green Guides provide examples of General Principles in order to "provide the Commission's views on how reasonable consumers likely interpret certain claims."  16 C.F.R. § 260.1(d).

environmental benefit claim if the advertisement otherwise implies deceptive claims.  Therefore, marketers should ensure that the advertisement's context does not imply deceptive environmental claims.

16 C.F.R. § 260.4 (emphasis added).

27.    The Green Guides also provide examples of General Environmental Benefit Claims in order to "provide the Commission's views on how reasonable consumers likely interpret certain claims."[4]   The FTC provides the following relevant examples:[5]

> **Example 1:**  The brand name "Eco-friendly" likely conveys that the product has farreaching environmental benefits and may convey that the product has no negative environmental impact.  Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive.  **A claim**, such as "Eco-friendly: made with recycled materials," **would not be deceptive if:** (1) the statement "made with recycled materials" is clear and prominent; (2) the marketer can substantiate that the entire product or package, excluding minor, incidental components, is made from recycled material; **(3) making the product with recycled materials makes the product more environmentally beneficial overall; and (4) the advertisement's context does not imply other deceptive claims.**
>
> ***
>
> **Example 3:**  A marketer's advertisement features a picture of a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green type, the marketer states, "Buy our printer. Make a change." **Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, this advertisement is deceptive.**

*Id.*

---

[4] 16 C.F.R. § 260.1(d).
[5] 16 C.F.R. § 260.4.

## H&M's False and Misleading Representations

28.      H&M has misrepresented that the Products in its self-proclaimed sustainable "Conscious Choice" collection clothing line are a "Conscious Choice," more "sustainable," and environmentally friendly throughout the Class Period.

29.      Defendant defines its "Conscious Choice" collection and what the "Conscious Choice" green hangtag representations to consumers mean as follows: "**The shortcut to more sustainable shopping?  Conscious choice**...**pieces created with a little extra consideration for the planet**.  **Each Conscious choice product contains at least 50% of more sustainable materials** – **like** organic cotton or **recycled polyester** – but many more contain a lot more than that."[6]

30.      H&M has defined its "Conscious Choice" Products as "sustainable" and "our most environmentally sustainable products" throughout the Class Period.[7]

31.      H&M's marketing materials are replete with statements that the Products are "conscious," more "sustainable," and environmentally friendly.

32.      H&M labels the Products "Conscious Choice" with a green hangtag that claims that the Products are a "Conscious Choice," more "sustainable," environmentally friendly and lists the percentage of the Products that consist of recycled polyester.

---

[6] https://www2.hm.com/en_us/sustainability-at-hm/our-products/explained.html (emphasis added) (last accessed on 10/10/2022).
[7] *See e.g.,* https://tabitha-whiting.medium.com/sustainable-style-the-truth-behind-the-marketing-of-h-ms-conscious-collection-805eb7432002 (emphasis added)



33.     In addition, H&M's marketing, advertisements, and social media for the

"Conscious Choice" Collection Products centers around "green" imagery of Conscious-clad

models surrounded by lots of grass and plush green plants.



34.     Finally, during the Class Period, the "Sustainability" section of H&M's website,

https://www2.hm.com/en_us/sustainability-at-hm.html, contained the following statements that

the Products are "conscious," more "sustainable," and environmentally friendly:

- "At H&M we are committed to create great fashion, at the best price in **a sustainable way.  You can identify our most environmentally sustainable products by looking out for our green Conscious hangtags**."[8]

- "**The shortcut to more sustainable shopping? Conscious choice**."[9]

- "**We also have Conscious choice: pieces created with a little extra consideration for the planet. Each Conscious choice product contains at least 50% of more sustainable materials** — like organic cotton or **recycled polyester** — **but many contain a lot more than that.** The only exception is recycled cotton, where we

[8] https://tabitha-whiting.medium.com/sustainable-style-the-truth-behind-the-marketing-of-h-ms-conscious-collection-805eb7432002 (emphasis added)
[9] https://www2.hm.com/en_us/sustainability-at-hm/our-products/explained.html (emphasis added) (last accessed on 10/10/2022).

accept a level of at least 20%. The quality of recycled cotton makes it tricky to include a higher amount. But we're hoping to change that! **With new technological solutions and innovations, we're continually working to make our range even more sustainable**." [10]

- "Conscious choice can be found across all our departments — just look for the green hangtag!" [11]

(Emphasis added).

35.     Based on these "Conscious Choice," more "sustainable," and environmentally friendly representations, and under Defendant's own definition, reasonable consumers, including Plaintiffs, believe that the Products are made from more sustainable and environment friendly materials.  This understanding is reinforced by the Products' labeling, marketing, and advertising which further represents that they are "Green" products which are known to be more sustainable and environmentally friendly.  However, in spite of the labeling and marketing representations, the Products are not a "Conscious Choice," more "sustainable," and environmentally friendly. That is because they are not made from sustainable and environment friendly materials that are less harmful and more beneficial to the environment.

36.     Representing that a product is a "Conscious Choice," more "sustainable," and environmentally friendly is a statement of fact.

37.     Consumers reasonably believe that a product in a self-proclaimed sustainable clothing line labeled and marketed as a "Conscious Choice," more "sustainable," and environmentally friendly is made from sustainable and environment friendly materials that are less harmful and more beneficial to the environment.

---

[10] *Id.* (emphasis added) (last accessed on 10/10/2022).
[11] *Id.* (emphasis added) (last accessed on 10/10/2022).

**The Products Are Not "Conscious," More "Sustainable," or Environmentally Friendly**

38.     H&M's representations that the Products are a "Conscious Choice," more "sustainable," and environmentally friendly are false, misleading, and deceptive because they are not made from sustainable and environment friendly materials that are less harmful and more beneficial to the environment.

39.     The Products are primarily made of recycled polyester.  Recycled polyester has been heavily marketed by H&M as a sustainable and environmentally responsible material, and presented to consumers as a more "conscious choice."  But, given that recycled polyester is a one-way street to landfill or incineration, this material does not make a product a more "conscious choice," more "sustainable," or environmentally friendly.

40.     The vast majority of recycled polyester is sourced from recycled polyethylene terephthalate ("PET") bottles that have been mechanically recycled into polyester fiber for clothes.[12]  The method of downcycling PET bottles to polyester is problematic in several ways.

41.     First, PET bottles can generally already be recycled a number of times – in a closed-loop, bottle-to-bottle recycling system – if collected through clean collection streams, such as through deposit-return systems.[13]  Indeed, because mechanical recycling makes the fiber lose its strength, recycled PET clothes are not guaranteed to be infinitely recyclable, and often

_____

[12] Changing Markets Foundation. Synthetics Anonymous: Fashion Brands' Addiction to Fossil Fuels Report, 2021 at BOX 2.2: Downcycling plastic bottles to clothes. [ONLINE] Available at: https://changingmarkets.org/portfolio/fossil-fashion/ (last accessed on October 10, 2022); Changing Markets Foundation (2021) Fossil fashion: The hidden reliance of fast fashion on fossil fuels. [ONLINE] Available at: http://changingmarkets.org/wp-content/uploads/2021/01/FOSSIL-FASHION_Web-compressed.pdf. (last accessed on October 10, 2022); Ellen MacArthur Foundation (2017) A new textiles economy: Redesigning fashion's future. [ONLINE] Available at: https://www.ellenmacarthurfoundation.org/our-work/activities/make-fashion-circular/report. (last accessed on October 10, 2022).
[13] Changing Markets Foundation. Synthetics Anonymous: Fashion Brands' Addiction to Fossil Fuels Report, 2021 at BOX 2.2: Downcycling plastic bottles to clothes. Available online: https://changingmarkets.org/portfolio/fossil-fashion/ (last accessed on October 10, 2022).

lose durability when repurposed multiple times.[14]  Downcycling PET bottles to clothes is not a circular solution, and eventually these products end up in landfill.[15]  In comparison, PET bottles can be recycled back into PET bottles many times if they are part of clean, separated waste streams.[16]  Refillable PET bottles can be reused or refilled up to fifteen (15) times before recycling, eliminating the need to manufacture new bottles and avoiding many of the environmental impacts associated with their production and end-of-life management.[17]  As such, turning plastic bottles into clothes should be considered a one-way ticket to landfill, incineration or being dumped in nature.[18]

42.     Second, there is direct competition between the packaging and clothing industries for PET bottles.[19]  The introduction of legislation in the United States, and several jurisdictions around the world, regarding recycled content targets for PET bottles will significantly influence demand from bottle manufacturers.[20]  As a result, competition from fiber production will hinder the amount of recyclable PET bottles being used for bottle-to-bottle recycling.[21]  In a circular economy, materials should be reused and recycled like-for-like to prevent waste and unnecessary extraction of virgin materials – in other words, clothes should be made into new clothes, and packaging into new packaging, rather than poaching from other waste streams.

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*

43.     Third, recycled polyester does not restrict the shedding of microplastics, meaning billions of plastic particles still end up reaching the ocean, the air we breathe and our food chains.[22]

44.     Finally, H&M's Conscious Choice Collection actually contains a higher percentage of synthetics that its main collection, standing at 72% versus 61% respectively.[23] Similarly, 57% of the garments in the Conscious Collection use polyester, in contrast to 52% of the H&M main collection.[24]  Recycled polyester is the main reason why H&M's Conscious Collection has a higher percentage of synthetics than its main collection; given that recycled polyester represents a one-way street to landfill or incineration, this material does not make a product more "conscious," "sustainable," and environmentally friendly.

45.     Basing sustainability strategies on the idea that consumers can continue to consume disposable plastic goods (because they can be recycled into more products) is highly problematic.  This method of "green" marketing does not address the fundamental issue of perpetuating disposable solutions and over-consumption of natural resources.  Indeed, these strategies encourage consumers to buy more clothes or throw away garments sooner, in the belief they can be recycled in some magic machine.

46.     Thus, the Products give the false and misleading impression that they are a "Conscious Choice," more sustainable, environmentally friendly, and that they are less harmful or more beneficial to the environment than what they really are.

---

[22] *Id.* at 2.2.3. Microplastics: Swept under the carpet (last accessed on October 10, 2022).
[23] *Id.* at 3.2.1. Sustainability claims and greenwashing (last accessed on October 10, 2022).
[24] *Id.*

**Plaintiff and Reasonable Consumers Were Misled by the Products**

47.     Given the significant presence of harmful and environmentally damaging materials in the Products, H&M's representations that they are a "Conscious Choice," more "sustainable," and environmentally friendly are deceptive and misleading.

48.     By misleadingly and deceptively labeling and marketing the Products, as described herein, H&M sought to take advantage of consumers' desire for true "conscious," more sustainable and environmentally friendly clothing products.  H&M has done so at the expense of unwitting consumers and H&M's lawfully acting competitors, over whom H&M maintains an unfair competitive advantage.

49.     A review of consumer sales between 2013 and 2018 by researchers at the Stern Center for Sustainable Business, of New York University, found that products that were highlighted as "sustainable" would sell much faster than products which were not.[25]  So, by giving the impression that they are an environmentally conscious company, and by selling products that are marketed as "conscious," more "sustainable, and environmentally friendly, H&M is creating a massive advantage in terms of sales and profit.  This is what lies at the heart of its sustainable style focus.

50.     The "conscious," "sustainable," and environmentally friendly representations were and are material to reasonable consumers, including Plaintiffs, in making purchasing decisions.

51.     Plaintiffs relied on H&M's misrepresentations, described herein, in making the decision to purchase the Products.

---

[25] "Research on IRI Purchasing Data (2013-2018)," NYU Stern (March 2019).  [ONLINE] Available at: https://www.stern.nyu.edu/sites/default/files/assets/documents/NYU%20Stern%20CSB%20Sustainable%20Share%20Index%E2%84%A2%202019.pdf (last accessed on October 10, 2022).

52.     At the time Plaintiffs purchased the Products, Plaintiffs did not know, and had no reason to know, that the Products' labeling and advertising were false, misleading, deceptive, and unlawful as set forth herein.

53.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is a "Conscious Choice," more "sustainable," and environmentally friendly, especially at the point of sale.  Consumers would not know the true nature of the clothing's materials merely by reading the products' label.

54.     Discovering that the Products are not a "Conscious Choice," more "sustainable," and environmentally friendly because they are not made from sustainable and environmentally friendly materials that are actually less harmful and more beneficial to the environment requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though all of the Products' materials are identified on the Products' labeling, the reasonable consumer would not understand – nor are they expected to understand - that these materials are environmentally damaging.

55.     Moreover, the reasonable consumer is not expected or required to scour the Products' materials in order to confirm or debunk H&M's prominent claims, representations, and warranties that the Products are a "Conscious Choice," more "sustainable," and environmentally friendly.

56.     H&M materially misled and failed to adequately inform reasonable consumers, including Plaintiffs, that the Products can cause harm to the environment.  A reasonable consumer understands H&M's "Conscious Choice," more "sustainable," and environmentally friendly claims to mean exactly what H&M proclaims them the mean – that the Products are

made from more sustainable and environmentally friendly materials that are actually less harmful and more beneficial to the environment.

57.     H&M's representations that the Products are a "Conscious Choice," more "sustainable," and environmentally friendly induced consumers, including Plaintiffs and Class Members, to pay a premium to purchase the Products.  Plaintiffs and Class Members relied on H&M's false and misleading misrepresentations in purchasing the Products at some premium price above comparable alternatives that are not represented to be "conscious," "sustainable," and environmentally friendly.  If not for H&M's misrepresentations, Plaintiffs and Class Members would not have been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of H&M's misrepresentations.

58.     H&M knew that consumers will pay more for a product labeled a "Conscious Choice," more "sustainable," and environmentally friendly, and intended to deceive Plaintiffs and putative class members by marketing and labeling the Products as purportedly "conscious," "sustainable," and environmentally friendly products.

59.     H&M has profited enormously from its false and misleading representations that the Products are a "Conscious Choice," more "sustainable," and environmentally friendly.  The purpose of this action is to require H&M to undertake a corrective advertising campaign and to provide consumers with monetary relief for H&M's deceptive and misleading product claims.

60.     Plaintiffs would not have purchased the Products if they had known the truth. Accordingly, based on H&M's material misrepresentations and omissions, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.

61.     It is possible, however, that Plaintiffs would purchase the Products in the future if they were properly labeled, and/or the Products complied with the labeling and advertising

19

statements.  Specifically, Plaintiffs would like to purchase the Products again if the Products were actually made from more sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

63.     Plaintiffs brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of themselves and all persons in the United States, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use ("Nationwide Class" or the "Class").

64.     Plaintiff Abraham Lizama brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and seeks to represent a subclass defined as all Missouri residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use ("Missouri Subclass").

65.     Plaintiff Marc Doten brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and seeks to represent a subclass defined as all California residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use ("California Subclass").

66.     Excluded from the Classes:

i.      Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, assigns, and employees;

ii.     Counsel and members of the immediate family of counsel for Plaintiffs herein;

iii.     The judge and staff to whom this case was assigned, and any member of the

judge's immediate family;

iv.     Individuals asserting claims for personal injury; and

v.     Persons or entities that purchase the Products for sole purposes of resale.

67.     Plaintiffs reserve the right to revise the class definitions with greater specificity or division after having an opportunity to conduct discovery.

68.     The proposed Classes meet all requirements for class certification.  The members of the Classes satisfy the numerosity standards.  Plaintiffs have a good faith belief that there are tens of thousands of Class Members.  Defendant has sold millions of units of the Products.  As a result, joinder of all Class Members in a single action is impracticable.  Class Members may be informed of the pendency of this Class Action by published and broadcast notice.

69.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, the "Conscious Choice" Collection Products in connection with Defendant's false, misleading, and deceptive statements. Plaintiffs and Class Members have all sustained damages in that each paid the purchase price for the Products and sustained damages from Defendant's wrongful conduct.

70.     Plaintiffs will fairly and adequately protect the interests of the Class and the Subclasses and are adequate representatives of the Class and Subclasses because they are a member of the Class and respective Subclasses.  Plaintiffs have no interests which conflict with the interests of the members of the Class and Subclasses they seek to represent.  The interests of members of the Class and Subclasses will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who have extensive experience prosecuting complex class action litigation.

21

71.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Common questions of law and/or fact exist as to all members of the Class, which predominate over any questions affecting solely individual members of the Class.  The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

      a.   Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

      b.   Whether Defendant's conduct was unfair and/or deceptive;

      c.   Whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the classes;

      d.   Whether Plaintiffs and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages; and

      e.   Whether injunctive, declaratory, and/or other equitable relief is warranted.

72.     With respect to the Missouri Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the Missouri Merchandising and Practices Act.

73.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the California Consumer Legal Remedies Act, as well as California's False Advertising law and Unfair Competition law.

74.     These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual members of the Class and Subclasses. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Classes.

75.     A class action is superior, with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by members of the Class and the Subclasses would impose heavy burdens upon the courts and Defendant, and would create a risk of inconsistent or varying adjudications of the questions of law and/or fact common to the Class and the Subclasses.  In addition, the prosecution of separate actions by members of the Class and the Subclasses would establish incompatible standards of conduct for any party opposing the Class and the Subclasses.  Also, the prosecution of separate actions by individual members of the Class and the Subclasses, if fully adjudicated, as a practical matter, would be dispositive of the interests of the other members of the Class and the Subclasses not parties to that particular adjudication and, as such, would substantially impair or impede upon those members of the Class and the Subclasses' abilities to protect their interests.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

76.     The interest of members of the Class and the Subclasses in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Class and Subclasses have a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable.  The amounts at stake for members of the Class and the Subclasses,

while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against Defendant.  Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

**COUNT I**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Deception, 15 CSR 60-9.020**
**(As to the Missouri Subclass Only)**

77.     Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

78.     Plaintiff Lizama brings this Count individually and on behalf of the members of the Missouri Subclass.

79.     The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq*.

80.     Defendant's actions alleged herein violated, and continue to violate, the MMPA.

81.     Defendant is a "person" within the meaning of the MMPA, at Missouri Revised Statutes § 407.010(5).

82.     The goods purchased from Defendant are "merchandise" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(4).

83.     The transactions resulting in purchases of goods from Defendant in Missouri are a "sale" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(6).

84.     Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the "Conscious Choice" Collection Products in violation of Mo. Rev. Stat. § 407.020, which states in relevant part as follows:

407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice. ... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

85.    Plaintiff Lizama and Missouri Subclass Members purchased the "Conscious Choice" Collection Products, products that were falsely and deceptively represented as a "Conscious Choice," more "sustainable," and environmentally friendly as stated above, in violation of the Missouri Merchandising Practices Act and as a result Plaintiff Lizama suffered economic damages, in that the products he and other Missouri Subclass Members purchased were worth less than the products they thought they had purchased had Defendant's representations been true.

86.    Defendant's misrepresentations regarding the "Conscious Choice" Collection Products are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff Lizama and members of the Missouri Subclass.

87.    Plaintiff Lizama and Missouri Subclass Members purchased the "Conscious Choice" Collection Products for personal, family, or household purposes.

88.    Plaintiff Lizama and Missouri Subclass Members reasonably and justifiably relied on Defendant's misleading and fraudulent representations about the "Conscious Choice" Collection Products when purchasing them.

89.    At all times relevant herein, Plaintiff Lizama was unaware that the "Conscious Choice" Collection Products were not a "Conscious Choice," more "sustainable," and environmentally friendly, and that they were not made from materials that are less harmful and more beneficial to the environment.

25

90.     Defendants' marketing materials for the "Conscious Choice" Collection Products do not disclose that the Products are not "conscious," more "sustainable," and environmentally friendly.

91.     Defendant's website does not disclose that the Products are not "conscious," more "sustainable," and environmentally friendly.

92.     Defendant's labeling for the "Conscious Choice" Collection Products does not disclose that the Products are not "conscious," more "sustainable," and environmentally friendly.

93.     Defendant's representations that the "Conscious Choice" Collection Products are a "Conscious Choice," more "sustainable," and environmentally friendly are a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

94.     The foregoing acts and practices of Defendant constituted unfair and unlawful practices, and deceptive conduct, in violation of the Missouri Merchandising Practices Act.

95.     As a direct proximate result of the above-described practices, Plaintiff Lizama and the Missouri Subclass Members suffered ascertainable loss of money due to the purchasing of the "Conscious Choice" Collection Products.

96.     Plaintiff Lizama and Missouri Subclass Members have suffered an ascertainable loss caused by Defendant because they would not have purchased the "Conscious Choice" Collection Products or would have paid significantly less for the Products, had they known that Defendant's conduct was misleading and fraudulent.

97.     Appropriate injunctive relief is necessary to prevent Defendant's MMPA violations from continuing.  If Defendant's violations of the MMPA are not stopped by such

injunctive relief, Plaintiff Lizama and the members of the Missouri Subclass will continue to suffer injury.

98.     Defendant's misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

99.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Lizama and the Missouri Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including not received the benefit of their bargain in purchasing the Products.

100.     Plaintiff Lizama and other members of the Missouri Subclass lost money or property as a result of Defendant's violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were not a "Conscious Choice," more "sustainable," and environmentally friendly; (b) they paid a substantial price premium compared to other household clothing products due to Defendant's misrepresentations and deceptions; and (c) the Products do not have the characteristics, uses, or benefits as promised.

101.     Plaintiff Lizama and the Missouri Subclass seek all monetary and non-monetary relief allowed by law, including treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

102.     WHEREFORE, Plaintiff Lizama and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT II**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Misrepresentation, 15 CSR 60-9.070**
**(As to the Missouri Subclass Only)**

103.     Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

104.    Plaintiff Lizama brings this Count individually and on behalf of the members of the Missouri Subclass.

105.    "A misrepresentation is an assertion that is not in accord with the facts."  15 CSR 60-9.070.

106.    As described further herein, whether a product is a "Conscious Choice," more "sustainable," and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

107.    Defendant's representations that the Products are a "Conscious Choice," more "sustainable," and environmentally friendly – when the Products are not made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment – is a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

108.    Defendant's representations that the Products are a "Conscious Choice," more "sustainable," and environmentally friendly is a material misrepresentation.

109.    Defendant's misrepresentations were material because they were likely to deceive reasonable consumers.

110.    Plaintiff Lizama purchased the Products for personal, family, or household purposes.

111.    Plaintiff Lizama suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

112.    WHEREFORE, Plaintiff Lizama and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

28

**COUNT III**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Concealment or Omission of any Material Fact, 15 CSR 60-9.110**
**(As to the Missouri Subclass Only)**

113.     Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

114.     Plaintiff Lizama brings this Count individually and on behalf of the members of the Missouri Subclass.

115.     The MMPA prohibits as an unlawful practice the act, use or employment of the "concealment, suppression or omission of any material fact" in connection with the sale or advertisement of any merchandise in trade or commerce.  §407.020.1, RSMo.

116.     A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."  15 CSR 60-9.010(1)(C).

117.     "Concealment of a material fact" is defined as "any method, act, use or practice which operates to hide or keep material facts from consumers."  15 CSR 60-9.110(1).

118.     "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."  15 CSR 60-9.110(3).

119.     Defendant's actions as alleged herein constitute the concealment and omission of material facts.

120.    Among other things, Defendants concealed and omitted the material facts that the Products are not a "Conscious Choice," more "sustainable," and environmentally friendly.

121.    As described further herein, the representation that a product is a "Conscious Choice," more "sustainable," and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

122.    Defendant's labeling, packaging, marketing, and advertising for the Products does not disclose that the Products are not a "Conscious Choice," more "sustainable," and environmentally friendly, and that they are not made from materials that are less harmful and more beneficial to the environment.

123.    As described further herein, whether a product is a "Conscious Choice," more "sustainable," and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

124.    Defendant's failure to disclose the fact that the Products are not a "Conscious Choice," more "sustainable," and environmentally friendly, and that they are not made from materials that are less harmful and more beneficial to the environment was a violation of the Missouri Merchandising Practice Act and was a material omission.

125.    Plaintiff Lizama purchased the Products for personal, family, or household purposes.

126.    Plaintiff Lizama suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. In addition, the Products are legally worthless.

127.    WHEREFORE, Plaintiff Lizama and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT IV**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Half-Truths, 15 CSR 60-9.090**
**(As to the Missouri Subclass Only)**

128.    Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

129.    Plaintiff Lizama brings this Count individually and on behalf of the members of the Missouri Subclass.

130.    A half-truth misrepresentation as defined in the MMPA occurs when "any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading."  15 CSR 60-9.090.

131.    A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."  15 CSR 60-9.010(1)(C).

132.    "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 CSR 60-9.110(3).

133.    Defendant's actions as alleged herein constitute the concealment and omission of material facts.

134.    Among other things, Defendant concealed and omitted the material facts that the Products were not more sustainable and environmentally friendly.

31

135.    As described further herein, the representation that a product is a "Conscious Choice," more "sustainable," and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

136.    Defendant's labeling, packaging, marketing, and advertising for the Products does not disclose that the Products are not a "Conscious Choice," more "sustainable," and environmentally friendly, and that they are not made from materials that are less harmful and more beneficial to the environment.

137.    As described further herein, whether a product is a "Conscious Choice," more sustainable, and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

138.    Defendant's failure to disclose the fact that the Products are not a "Conscious Choice," more sustainable, and environmentally friendly, and that they are not made from materials that are less harmful and more beneficial to the environment was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

139.    Plaintiff Lizama purchased the Products for personal, family, or household purposes.

140.    Plaintiff Lizama suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

141.    WHEREFORE, Plaintiff Lizama and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT V**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Unfair Practice, 15 CSR 60-8.020**
**(As to the Missouri Subclass Only)**

142.     Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each

and every allegation set forth in the preceding paragraphs of this Complaint.

143.     Plaintiff Lizama brings this Count individually and on behalf of the members of

the Missouri Subclass.

144.     An unlawful practice as defined in the MMPA is any practice which "offends any

public policy as it has been established by the Constitution, statutes or common law of this state,

***or by the Federal Trade Commission, or its interpretive decisions***."  15 CSR 60-8.020

(emphasis added).

145.     Additionally, Defendant's marketing, advertising, and labeling of the Products, as

alleged herein, violates the MMPA, § 407.010 *et. seq.*

146.     Defendant's actions as alleged herein constitute an unlawful practice under the

MMPA.

147.     Here, Defendant's labeling, marketing, and advertising of the Products, as alleged

herein, violates the Guides for the Use of Environmental Marketing Claims, promulgated at 16

C.F.R. Part 260 ("Green Guides"), among others as set forth in this Complaint.

148.     As alleged in detail throughout the Complaint, Defendant's labeling, marketing,

and advertising of the Products as a "Conscious Choice," more "sustainable," and

environmentally friendly, despite the Products neither being "conscious," more sustainable, nor

environmentally friendly, and not made from materials that are less harmful and more beneficial

to the environment, violates, and is therefore not in compliance with, the Federal Trade

Commission's revised Guides for the Use of Environmental Marketing Claims, 16 C.F.R. Part 260 (Green Guides).

149.    Defendant's packaging, labeling, marketing, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

150.    Defendant knew or should have known of its unlawful conduct.

151.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein.  Defendant should have complied with the law in its labeling, marketing, and advertising or otherwise manufactured and sold products that are truly more sustainable and environmentally friendly.

152.    All of the conduct alleged herein occurred and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of ongoing conduct repeated on thousands of occasions daily.

153.    Plaintiff Lizama purchased the Products for personal, family, or household purposes.

154.    Plaintiff Lizama suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

155.    WHEREFORE, Plaintiff Lizama and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT VI
### Violation of California's Unfair and Deceptive Acts and Practices Law
### Business and Professions Code § 17200, *et seq.*
### (As to the California Subclass Only)

156.    Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

157.    Plaintiff Doten brings this Count pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of himself and the California Subclass.

158.    Defendant, in its marketing, advertising, and labeling of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products, specifically, marketing and labeling the Products a "Conscious Choice," more "sustainable," and environmentally friendly when they are not more sustainable and environmentally friendly because they are not made from materials that are less harmful and more beneficial to the environment.  Such claims and omissions appear on the label of the Products, which are sold at retail stores, point-of-purchase displays, as well as Defendant's official website, and other advertisements.

159.    Defendant's labeling, marketing, and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff Doten, believing that the Products are a "Conscious Choice," more "sustainable, and environmentally friendly.

160.    The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200.

161.    Defendant does not have any reasonable basis for the claims about the Products made in Defendant's marketing, advertising, and on Defendant's packaging or labeling because the Products are not more sustainable and environmentally friendly since they are not made from

35

materials that are less harmful and more beneficial to the environment. Defendant knew and

knows that the Products are not a "Conscious Choice," more "sustainable," and environmentally

friendly though Defendant intentionally advertised and marketed the Products to deceive

reasonable consumers into believing that Products were "conscious," more sustainable, and

environmentally friendly.

162. In addition, Defendant's use of various forms of marketing and advertising media

to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as

represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading

advertising, and an unlawful business practice within the meaning of Business and Professions

Code §§ 17200 and 17531, which advertisements have deceived and are likely to deceive the

consuming public, in violation of Business and Professions Code § 17200.

163. The misrepresentations by Defendant alleged herein constitute unfair, unlawful,

and fraudulent business practices within the meaning of California Business and Professions

Code § 17200, as set forth more fully below.

164. Defendant failed to avail itself of reasonably available, lawful alternatives to

further its legitimate business interests.

165. Plaintiff Doten and the California Subclass would not have purchased the

Products but for the representations by Defendant about the Products as being a "Conscious

Choice," more "sustainable," and environmentally friendly.

166. Plaintiff Doten and the California Subclass have suffered injury in fact and have

lost money or property as a result of and in reliance upon Defendant's false representations.

167. All of the conduct alleged herein occurs and continues to occur in Defendant's

business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course

of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or it is otherwise ordered to do so.

168.     Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff Doten and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling, marketing, and advertising the Products as a "Conscious Choice," more "sustainable," and environmentally friendly.  Likewise, Plaintiff Doten and the California Subclass seek an order requiring Defendant to rectify such misrepresentations through truthful disclosures, and to preclude Defendant's from denying the existence and significance of said misrepresentations in response to inquiries regarding the Products.  Plaintiff Doten and the California Subclass have no alternative adequate remedy at law.  Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff Doten and the California Subclass.  Plaintiff Doten and the California Subclass also seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

### A.  "Unfair" Prong

169.     Under California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).  Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code § 17200.  They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Some courts require that "unfairness must

be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

170.   The injuries to Plaintiff Doten and the California Subclass resulting from Defendant's unfair business practice outweigh any benefits.  Defendant's action of marketing, advertising, and labeling the Products as a "Conscious Choice," more "sustainable," and environmentally friendly when they are not more sustainable and environmentally friendly because they are not made from materials that are less harmful and more beneficial to the environment, does not confer any benefit to consumers.  Defendant's action of marketing, advertising, and labeling the Products as a "Conscious Choice," more "sustainable," and environmentally friendly does not confer any benefit to consumers when the consumers do not receive products commensurate with consumers' reasonable expectations engendered by such false, misleading, and deceptive marketing and labeling.  Defendant's action of marketing, advertising, and labeling the Products as a "Conscious Choice," more "sustainable," and environmentally friendly when consumers end up overpaying for the Products and receiving Products of lesser standards than what they reasonably expected to receive.  Consumers cannot reasonably avoid the injuries caused by Defendant's deceptive labeling and advertising of the Products.  Accordingly, the injuries caused by Defendant's deceptive labeling, marketing, and advertising outweigh any benefits.

171.   The gravity of the harm to Plaintiff Doten and the California Subclass resulting from Defendant's unfair business practice outweighs any utility.  Defendant's conduct of marketing, advertising, and labeling the Products as a "Conscious Choice," more "sustainable," and environmentally friendly when they are not more sustainable and environmentally friendly because they are not made from materials that are less harmful and more beneficial to the

environment, has no legitimate utility.  The utility of Defendant's conduct is vastly outweighed by the gravity of harm.

172.    As alleged herein, the misrepresentations by Defendant constitute an unfair business practice within the meaning of California Business and Professions Code, § 17200.

173.    Defendant knew or should have known of its unfair conduct as alleged herein.

174.    There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Defendant could have refrained from marketing, advertising, and labeling the Products as a "Conscious Choice, more "sustainable," and environmentally friendly.

175.    All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

176.    Pursuant to Business and Professions Code § 17203, Plaintiff Doten and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of marketing, advertising, and labeling the Products as a "Conscious Choice, more "sustainable," and environmentally friendly.  Plaintiff Doten and the California Subclass have no adequate remedy at law.  Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff Doten and the California Subclass.  Plaintiff and the Class also seek restitution of the amount Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

177.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct.  Plaintiff and the California Subclass paid an unwarranted premium for these Products.  Specifically, Plaintiff Doten and the California Subclass paid for

Products that are not more sustainable, environmentally friendly and are not made from materials that are less harmful and more beneficial to the environment.  Plaintiff Doten and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' marketing, advertising, and labeling were deceptive.

### B.  "Fraudulent" Prong

178.    California Business and Professions Code, §§ 17200, *et seq.*, prohibits fraudulent conduct that is likely to deceive members of the public.  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992).

179.    Defendant's labeling, marketing, and advertising of the Products as a "Conscious Choice," more "sustainable, and environmentally friendly, as alleged herein, is false, deceptive, misleading, and unreasonable, and, therefore, constitutes a fraudulent business practice in violation of California Business and Professions Code, § 17200.

180.    Defendant knew, or should have known, that the Products are not more sustainable, environmentally friendly, and are not made from materials that are less harmful and more beneficial to the environment.

181.    Labeling, marketing, and advertising Products as a "Conscious Choice," more "sustainable, and environmentally friendly is likely to deceive members of the public into believing that they are more sustainable, environmentally friendly and are made from materials that are less harmful and more beneficial to the environment.

182.    At all relevant times, Defendant had reasonably available alternatives to further its legitimate business interests.  Defendant could have refrained from labeling, marketing, and advertising the Products as a "Conscious Choice," more "sustainable, and environmentally

friendly or manufactured and sold products that are made from materials that are less harmful and more beneficial to the environment.

183.   All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of ongoing conduct repeated on thousands of occasions daily.

184.   Pursuant to Business and Professions Code §17203, Plaintiff Doten and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of marketing, advertising, and labeling the Products as are made from materials that are less harmful and more beneficial to the environment.  Plaintiff Doten and the California Subclass have no adequate remedy at law.  Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff Doten and the California Subclass.  Plaintiff Doten and the California Subclass also seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

185.   Plaintiff Doten and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.  Plaintiff Doten and the California Subclass have paid an unwarranted premium for the Products.  Specifically, Plaintiff Doten and the California Subclass paid for products that they believed were "conscious," more sustainable, and environmentally friendly when, in fact, they are not more sustainable, environmentally friendly because they are not made from materials that are less harmful and more beneficial to the environment.  Plaintiff Doten and the California Subclass would not have purchased the Products if they had known that they were not "conscious," more sustainable, and environmentally friendly.

### C. "Unlawful" Prong

186.    California Business and Professions Code, § 17200, *et seq.*, identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

187.    Here, Defendant's labeling of the Products, as alleged herein, violates the Guides for the Use of Environmental Marketing Claims, promulgated at 16 C.F.R. Part 260 ("Green Guides"); the False Advertising Law, codified at Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and the Consumer Legal Remedies Act, codified at Cal. Civ. Code §§ 1750, *et seq.*, among others as set forth in this Complaint.

188.    As alleged in detail throughout the Complaint, Defendant's use of the "Conscious Choice," more "sustainable," and environmentally friendly marketing, advertising, and labeling of the Products, despite the Products not being more sustainable, environmentally friendly because they are not being made from materials that are less harmful and more beneficial to the environment, violates, and is therefore not in compliance with, the Federal Trade Commission's revised Guides for the Use of Environmental Marketing Claims, 16 C.F.R. Part 260 (Green Guides).

189.    Additionally, Defendant's advertising of the Products, as alleged herein, violates California Civil Code, §§ 1750, *et seq.* and California Business and Professions Code § 17500, *et seq.*

190.    Defendant's labeling, marketing, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

191.    Defendant knew or should have known of its unlawful conduct.

192.    As alleged herein, the misrepresentations by Defendant constitute an unlawful business practice within the meaning of California Business and Professions Code § 17200.

193.    Additionally, Defendant's misrepresentations constitute violations of California Business and Professions Code, § 17580.5, which provides that it is "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied."

194.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein.  Defendant should have complied with the law in its labeling, marketing, and advertising or otherwise manufactured and sold products that are truly "conscious," more sustainable, and environmentally friendly.

195.    All of the conduct alleged herein occurred and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of ongoing conduct repeated on thousands of occasions daily.

196.    Pursuant to Business and Professions Code, § 17203, Plaintiff Doten and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.  Plaintiff Doten and the California Subclass have no adequate remedy at law.  Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff Doten and the California Subclass.  Plaintiff Doten and the California Subclass also seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

197.    Plaintiff Doten and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct.  Plaintiff Doten and the California

Subclass paid an unwarranted premium for the Products.  Plaintiff Doten and the California

Subclass would not have purchased the Products if they had known that Defendant purposely

deceived consumers into believing that the Products are "conscious," more sustainable, and

environmentally friendly clothing products.

**COUNT VII**
**Deceptive Advertising Practices**
**Violation of California's Business and Professions Code § 17500,** *et seq.*
**(As to the California Subclass Only)**

198.    Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each

and every allegation set forth in the preceding paragraphs of this Complaint.

199.    Plaintiff Doten brings this Count pursuant to Business and Professions Code

Section 17500, *et seq.*, on behalf of himself and the California Subclass.

200.    California Business & Professions Code § 17500 prohibits "unfair, deceptive,

untrue or misleading advertising[.]"

201.    Defendant violated § 17500 when it represented, through its false and misleading

advertising and other express representations, that Defendant's Products possessed

characteristics and value that they did not actually have.

202.    Defendant's deceptive practices were specifically designed to induce reasonable

consumers like Plaintiff Doten and members of the California Subclass to purchase the Products.

Defendant's uniform, material representations and omissions regarding the Products were likely

to deceive the public into believing that the Products are more sustainable and environmentally

friendly.  Defendant knew or should have known that its uniform representations and omissions

were untrue and misleading.  Plaintiff Doten and the California Subclass purchased the Products

in reliance on the representations made by Defendant, as alleged herein.

203.    Plaintiff Doten and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff Doten and members of the California Subclass.

204.    The above acts of Defendant, in disseminating materially misleading and deceptive representations and statements throughout California and the nation to consumers, including Plaintiff Doten and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

205.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of § 17500.

206.    Defendant continues to engage in unlawful, unfair and deceptive practices in violation of § 17500.

207.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff Doten and members of the California Subclass, pursuant to § 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations.  Plaintiff Doten and the California Subclass have no adequate remedy at law.  Without equitable relief, Defendant's unfair, deceptive, untrue, and misleading practices will continue to harm Plaintiff Doten and the California Subclass.  Plaintiff Doten and members of the California Subclass are also entitled to

compensatory, monetary, restitutionary, and punitive damages in an amount to be determined at trial.

**COUNT VIII**
**Consumers Legal Remedy Act**
**Violation of Cal. Civ. Code § 1750, et seq.**
**(As to the California Subclass Only)**

208.   Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

209.   Plaintiff Doten brings this Count pursuant to California's Consumer Legal Remedies Act ("CLRA"), codified at Cal. Civ. Code § 1750, *et seq.*, on behalf of himself and the California Subclass.

210.   The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

211.   The Products are "goods," as defined by the CLRA in California Civil Code, section 1761(a).

212.   Defendant is a "person," as defined by the CLRA in California Civil Code, section 1761(c).

213.   Plaintiff Doten and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code, § 1761(d).

214.   Purchase of the Products by Plaintiff Doten and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code, § 1761(e).

215.   Defendant violated § 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely labeled and advertised as being a "Conscious Choice," more "sustainable," and

46

environmentally friendly.  Defendant knew that consumers will often pay more for products with this attribute and have unfairly profited from their false and misleading claims.

216.    Similarly, Defendant violated § 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by falsely and deceptively labeling and advertising the Products as being a "Conscious Choice," more "sustainable," and environmentally friendly.

217.    In addition, Defendant violated § 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are falsely labeled and advertised as being "conscious," more sustainable, and environmentally friendly.

218.    Defendant's uniform and material misrepresentations and omissions regarding the Products were likely to deceive the public.  Defendant knew or should have known that its misrepresentations and omissions were untrue and misleading.

219.    Plaintiff Doten and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff Doten and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose; and Plaintiff Doten and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

220.    Plaintiff Doten and members of the California Subclass have been directly and proximately injured by Defendant's conduct.  Such injury includes, but is not limited to, the purchase price of the Products and/or the premium paid for the Products.

221.    Given that Defendant's conduct violated § 1770(a), Plaintiff Doten and members of the California Subclass seek injunctive relief to put an end to Defendant's violations of the CLRA.  Plaintiff Doten and the California Subclass have no adequate remedy at law.  Without

equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff Doten and the California Subclass.  Plaintiff Doten and the California Subclass also seek restitution of the amounts Defendant acquired through the false advertising described herein.

222.    Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Products.

223.    More than thirty days prior to the commencement of this action, on or about March 23, 2022, Plaintiff Doten, on Plaintiff Doten's own behalf and on behalf of members of the California Subclass, notified Defendant of the alleged violations of the Consumers Legal Remedies Act and demanded Defendant immediately rectify them pursuant to California Civil Code, § 1782(a).  Plaintiff Doten delivered this notice and demand, via letters sent certified mail return receipt requested.  The letters were received by Defendant on March 28, 2022.  Defendant has not taken corrective action.

224.    The CLRA requires a plaintiff to concurrently file with the complaint an "affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d). Failure to file this affidavit requires that the claim be dismissed without prejudice. *Id.* However, because this case was filed in federal court, venue is governed by the federal venue statutes and not § 1780(d) or any other provision of state law.  *Jones v. Monsanto Company*, 2019 WL 9656365, at * 6 (W.D. Mo. Jun. 13, 2019).  "Moreover, venue is a procedural matter, so an affidavit confirming the facts necessary to establish venue would also appear to be a procedural matter – and federal law governs procedural matters in this case." *Id.*  As such, "§ 1780(d)'s venue affidavit requirement is not applicable to cases in federal court." *Id.* (citing *Evans v. Linden Research, Inc.*, 763 F.

48

Supp. 2d 735, 738 n.1 (E.D. Pa. 2011);  *see also Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 999 (S.D. Cal. 2015).; *Villa Lara v. LG Electronics U.S.A., Inc.*, 2018 WL 3748177, *6 (D. Minn. Aug. 7, 2018).

225.    Plaintiff Doten and the California Subclass seek an order from this Court enjoining Defendant from continuing to employ the false and deceptive advertising, as alleged herein, pursuant to § 1780(a)(2).  Plaintiff Doten and the California Subclass also seek compensatory, monetary, restitutionary, and punitive damages in an amount to be determined at trial.

**COUNT IX**
**Unjust Enrichment**
**(As to the National Class, the Missouri Subclass, and the California Subclass)**

226.    Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

227.    Plaintiffs bring this Count individually and on behalf of the members of the proposed Classes against the Defendant.

228.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiffs and the Classes.

229.    Plaintiffs and members of the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

230.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiffs and Class Members because they would not have purchased the Products if the true facts had been known.

231.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Classes for their unjust enrichment, as ordered by the Court.

## COUNT X
### Negligent Misrepresentation
### (As to the National Class, the Missouri Subclass, and the California Subclass)

232.    Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

233.    Plaintiffs bring this Count individually and on behalf of the members of the proposed Classes against the Defendant.

234.    Defendant has marketed the "Conscious Choice" Collection Products in a manner indicating that the Products are "a "Conscious Choice," more "sustainable," and environmentally friendly.  However, the Products are not "conscious," more sustainable, and environmentally friendly because they are not made from materials that are less harmful and more beneficial to the environment.  Therefore, Defendant has made misrepresentations as to the Products.

235.    Defendant's representations regarding the Products are material to a reasonable consumer because they relate to the composition of the Products purchased by consumers.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

236.    At all relevant times when such misrepresentations were made, Defendant knew or has been negligent in not knowing that the representations were false and misleading. Defendant had no reasonable grounds for believing its representations were not false and misleading.

237.    Defendant intends that Plaintiffs and other consumers rely on the representations made about the Products, as the representations are made prominently on the Products, and are reinforced throughout Defendant's marketing and advertising campaigns.

238.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased it at the prices at which they were offered.

239.    Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, premiums paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT XI**
**Fraud**
**(As to the National Class, the Missouri Subclass, and the California Subclass)**

240.    Plaintiffs hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

241.    Plaintiffs brings this Count individually and on behalf of the members of the proposed Classes against the Defendant.

242.     As discussed above, Defendant has willfully, falsely, and knowingly provided Plaintiffs and Class members with false or misleading material information about the Products and failed to disclose material facts about the Products, including but not limited to the fact that the Products are not "conscious," more sustainable, and environmentally friendly.  Despite this, Defendant continues to intentionally represent that the Products are a "Conscious Choice," more "sustainable," and environmentally friendly.  Therefore, Defendant has made, and continues to make, misrepresentations as to the Products.

243.     The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Products.

244.     Defendants' misrepresentations are material (*i.e.*, the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition of the Products.

245.     Defendant knew or recklessly disregarded the fact that the Products are not more sustainable and environmentally friendly because they are not made from materials that are less harmful and more beneficial to the environment.

246.     Defendant intends that consumers rely on these representations, as the representations are made prominently on the Product, and are reinforced throughout Defendant's marketing and advertising campaigns.

247.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they was offered.

52

248.    Therefore, as a direct and proximate result of Defendant's fraudulent actions, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, premiums paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**<u>PRAYER FOR RELIEF</u>**

249.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the nationwide Class, the Missouri Subclass, and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as National Class representatives; naming Plaintiff Lizama as Missouri Subclass representative; naming Plaintiff Doten as California Subclass representative; and naming Plaintiffs' attorneys as Class Counsel to represent the National Class, Missouri Subclass members, and California Subclass members;

b.    For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c.    For an order finding in favor of Plaintiffs, the Nationwide Class, the Missouri Subclass, and the California Subclass on all counts asserted herein;

d.    For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiffs and the Classes for all causes of action;

e.    For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and order Defendant to engage in corrective action;

f.      For an order requiring Defendant to undertake a corrective advertising campaign;

g.      For prejudgment and postjudgment interest on all amounts awarded;

h.      For injunctive relief as pleaded or as the Court may deem proper;

i.      For an order awarding Plaintiffs and the Class and Missouri Subclass and California Subclass their reasonable attorneys' fees and expenses and costs of suit; and

j.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

250.      Plaintiff demands a trial by jury on all issues so triable.

Dated:   November 3, 2022

Respectfully submitted,

Orlowsky Law, LLC

/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #MO57387
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiffs

Goffstein Law, LLC


/s/ Adam M. Goffstein
Adam M. Goffstein, #MO45611
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs