UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

---

ABRAHAM LIZAMA, MARC DOTEN, on behalf
of themselves and all others similarly situated,

Plaintiffs,

- against -

H&M HENNES & MAURITZ LP,

Defendant.

Civil Action No.: 4:22-cv-01170

---

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE

Jill Rembusch
**HEIN SCHNEIDER & BOND P.C.**
2244 S. Brentwood Blvd.
St. Louis, MO 63144
Tel.: (314) 863-9100
jrr@hsbattorneys.com

Staci Jennifer Trager (*pro hac vice* pending)
**NIXON PEABODY LLP**
300 S. Grand Avenue, Suite 4100
Los Angeles, CA  90071-3151
Tel.: (213) 629-6041
strager@nixonpeabody.com

Erin T. Huntington (*pro hac vice* pending)
**NIXON PEABODY LLP**
677 Broadway
Albany, New York 12207
Tel.: (518) 427-2650
ehuntington@nixonpeabody.com

Carlo F. Bustillos (*pro hac vice* pending)
**NIXON PEABODY LLP**
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel.: (415) 984-8448
cbustillos@nixonpeabody.com

*Attorney for Defendant H&M Hennes & Mauritz LP*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF ARGUMENT ............................................................................... 2

STATEMENT OF FACTS ...................................................................................... 3

A.    The Parties ................................................................................................ 3

B.    The Claims ................................................................................................ 4

ARGUMENT ........................................................................................................... 6

A.    Standard of Review ................................................................................... 6

B.    The Court Should Dismiss Counts I - VIII for Failure to State a Claim of Consumer
       Deception .................................................................................................. 6

       1.    Counts I – VIII Fail to Set Forth a Plausible Basis for Consumer Deception ....... 7
       2.    Count III Does Not Plead an Actionable Omission Under the MMPA ............... 11
       3.    Plaintiffs Have Not Suffered Any Ascertainable Loss Under the MMPA .......... 13
       4.    Count VI Fails to Adequately Plead Unfair Conduct Under the UCL ................ 16
       5.    Plaintiffs Fail to Plead a Violation of the Green Guides in Support of Counts V
              and VI .............................................................................................................. 17
       6.    Count VIII for Violation of the CLRA is Barred .................................................. 18

C.    Count IX for Unjust Enrichment is Duplicative and Fails to Identify a Cognizable Injury
       .................................................................................................................. 19

D.    Plaintiffs' Claims for Negligent Misrepresentation (Count X) and Fraud (Count XI) are
       Fatally Deficient........................................................................................ 20

E.    Plaintiffs' Requests for Relief Should be Dismissed or Stricken to the Extent They Lack
       Article III Standing .................................................................................. 21

       1.    Plaintiffs Lack Standing to Seek Injunctive Relief............................................. 21
       2.    Plaintiffs Lack Standing to Seek Relief for Products They Did Not Purchase..... 22
       3.    Plaintiffs Are Not Entitled to Equitable Relief ................................................... 23
       4.    Plaintiffs Nationwide Class Claims Must be Dismissed or Stricken ................... 23

CONCLUSION....................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allee v. Medrano*,
　　416 U.S. 802 (1974)...........................................................................................23

*Andino v. Apple, Inc.*,
　　2021 WL 1549667 (E.D. Cal. Apr. 20, 2021)..........................................................24

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)..............................................................................................6

*Augustine v. Talking Rain Beverage Co., Inc.*,
　　386 F. Supp. 3d 1317 (S.D. Cal. 2019)...................................................................24

*Beckman v. Arizona Canning Co., LLC*,
　　2017 WL 4227043 (S.D. Cal. Sept. 21, 2017).........................................................21

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)..............................................................................................6

*Benton v. Merrill Lynch & Co.*,
　　524 F.3d 866 (8th Cir. 2008) ..................................................................................7

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
　　2011 WL 6740338 (W.D. Mo. Dec. 22, 2011) ........................................................15

*Blake v. Career Educ. Corp.*,
　　4:08-cv821, 2009 WL 140742 (E.D. Mo. Jan. 20, 2009) ...........................................7

*Browning v. Anheuser-Busch, LLC*,
　　539 F. Supp. 3d 965 (W.D. Mo. 2021) ...................................................................21

*Carter v. Alcon Labs., Inc.*,
　　2014 WL 989002 (E.D. Mo. Mar. 13, 2014) ...........................................................20

*Cook v. ACS State & Local Sols., Inc.*,
　　663 F.3d 989 (8th Cir. 2011) ..................................................................................6

*In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*,
　　2017 WL 3863866 (W.D. Mo. Aug. 3, 2017)...........................................................24

*Drobnak v. Andersen Corp.*,
　　561 F.3d 778 (8th Cir. 2009) ..................................................................................7

## TABLE OF AUTHORITIES

**Pages**

*In re Facebook PPC Advertising Litigation*,
    2010 WL 5174021 (N.D. Cal. 2010) ........................................................4

*In re General Motors Corp. Anti-Lock Brake Products Liability Litigation*,
    966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd Briehl v. GMC*, 172 F.3d 623 (8th
    Cir. 1999) ...............................................................................................7

*Gibson v. Jaguar Land Rover N. Am., LLC*,
    2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ......................................24

*Grawitch v. Charter Commc'ns, Inc.*,
    750 F.3d 956 (8th Cir. 2014) ..................................................................16

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................16

*Hairston v. S. Beach Beverage Co.*,
    2012 WL 1893818 (C.D. Cal. May 18, 2012) ........................................8

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994).........................................................8

*Hennessey v. Gap, Inc.*,
    2022 WL 4447399 (E.D. Mo. Sept. 23, 2022)........................................20

*In re iPhone 4s Consumer Litig.*,
    637 F. App'x 414 (9th Cir. 2016) ...........................................................8

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) ......................................16, 22, 23

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) .................................................................4

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).................................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................22

*McCrary v. Stifel, Nicolaus & Co.*,
    687 F.3d 1052 (8th Cir. 2012) .................................................................24

*Meagley v. City of Little Rock*,
    639 F.3d 384 (8th Cir. 2011) ...................................................................22

*Mikhlin v. Johnson & Johnson*,
    2014 WL 6084004 (E.D. Mo. Nov. 13, 2014) ........................................15

## TABLE OF AUTHORITIES

**Pages**

*Mills v. City of Grand Forks*,
    614 F.3d 495 (8th Cir. 2010) ...................................................4

*In re NJOY, Inc. Consumer Class Action Litigation*,
    2015 WL 12732461 (C.D. Cal. 2015).....................................4

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) .................................................14

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*,
    643 F.3d 1115 (8th Cir. 2011) ...............................................4

*Parnes v. Gateway 2000, Inc.*,
    122 F.3d 539 (8th Cir. 1997) .................................................21

*Parziale v. HP, Inc.*,
    445 F. Supp. 3d 435 (N.D. Cal. 2020) .................................4

*Philips v. Ford Motor Co.*,
    726 F. App'x 608 (9th Cir. 2018) .........................................23

*Polk v. KV Pharm. Co.*,
    2011 WL 6257466 (E.D. Mo. Dec. 15, 2011) ......................14

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) ...............................................4

*Punian v. Gillette Co.*,
    2016 WL 1029607 (N.D. Cal. Mar. 15, 2016).......................17

*Rojas-Lozano v. Google, Inc.*,
    2016 WL 429794 (N.D. Cal. Feb. 3, 2016) ...........................17

*S&H Distribution, LLC v. Meyer Laboratory, Inc.*,
    2022 WL 5255323 (D.Neb., 2022) .........................................4

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009) .................................................23

*Sue Shin v. Campbell Soup Co.*,
    2017 WL 3534991 (C.D. Cal. Aug. 9, 2017).....................9, 20

*Thompson v. Allergan USA, Inc.*,
    993 F. Supp. 2d 1007 (E.D. Mo. 2014).................................14

*Thompson v. Jiffy Lube Int'l, Inc.*,
    250 F.R.D. 607 (D. Kan. 2008)..............................................25

4860-6466-2592.9

## TABLE OF AUTHORITIES

**Pages**

*True v. Conagra Foods, Inc.*,
    2011 WL 176037 (W.D. Mo. Jan. 4, 2011) .......................................................................25

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..........................................................................................6

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................................8

**State Cases**

*Am. Standard Ins. Co. of Wisconsin v. Bracht*,
    103 S.W.3d 281 (Mo. App. S.D. 2003) ...........................................................................20

*Binkley v. Am. Equity Mortg., Inc.*,
    447 S.W.3d 194 (Mo. banc 2014)....................................................................................20

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal.App.4th 151 (2001) ........................................................................................20, 21

*County of San Bernardino v. Walsh*,
    158 Cal.App.4th 533 (2007) ............................................................................................21

*Hess v. Chase Manhattan Bank, USA, N.A.*,
    220 S.W.3d 758 (Mo. banc 2007).....................................................................................8

*Howard v. Turnbull*,
    316 S.W.3d 431 (Mo. App. W.D. 2010)..........................................................................20

*Manderville v. PCG&S Grp., Inc.*,
    146 Cal. App. 4th 1486 (2007) .......................................................................................21

*Sunset Pools of St. Louis, Inc. v. Schaefer*,
    869 S.W.2d 883 (Mo. App. E.D. 1994) ..........................................................................15

**State Statutes**

Cal. Civ. Code § 1770...........................................................................................................2, 7

Cal. Civ. Code § 1782.............................................................................................................19

Cal. Bus. & Prof. Code § 17200 ..........................................................................................2, 7

Cal. Bus. & Prof. Code § 17500 ..........................................................................................2, 7

Mo. Rev. Stat. § 407.020.1 .......................................................................................................7

Mo. Rev. Stat. § 407.025.1 .......................................................................................................8

4860-6466-2592.9

## <u>TABLE OF AUTHORITIES</u>

<u>**Pages**</u>

15 CSR § 60-9110................................................................................................................12

**Rules**

Fed. R. Civ. P. Rule 9 ...................................................................................................7, 21

Fed. R. Civ. P. Rule 12 ....................................................................................3, 6, 7, 24, 25

Fed. R. Civ. P. Rule 23 ....................................................................................................24

**Regulations**

16 C.F.R. § 260.3 .............................................................................................................18

16 C.F.R. § 260.4 .............................................................................................................18

4860-6466-2592.9

Defendant H&M Hennes & Mauritz LP ("H&M" or "Defendant") submits this memorandum of law in support of its motion, pursuant to Rules 12(b)(1), (b)(6), and (f) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs Abraham Lizama ("Lizama") and Marc Doten's ("Doten") (collectively, with members of the proposed class "Plaintiffs") class action Complaint in its entirety and/or striking the nationwide class allegations.

## PRELIMINARY STATEMENT

H&M is a pioneer of sustainability efforts in the fashion industry and has been for over a decade. In 2013, it was the first global fashion retailer of its size to disclose its supplier list and has continuously expanded its transparency towards customers since.[1] For years, H&M has consistently been named as a leader in corporate sustainability efforts by a number of independent organizations examining a variety of metrics.[2] H&M's longstanding policies of openness and transparency mean that its successes and continued challenges in making its practices more sustainable are prominently featured in its statements to customers.[3]

Plaintiffs' claims rest entirely upon unreasonable inferential leaps from truthful representations regarding the composition of garments in an effort to fabricate and impute falsehoods to H&M. The Complaint's attempt to convert H&M's messaging into allegations that H&M is 'greenwashing,' fails because, *inter alia*, it selectively ignores the substance and context of H&M's candid disclosures. Accordingly, the Complaint must be dismissed in its entirety.

---

[1] *See* H&M Group, *Supply Chain,* https://hmgroup.com/sustainability/leading-the-change/transparency/supply-chain/ (last visited December 5, 2022).

[2] *See, e.g.,* H&M Group, *Awards and Recognitions,* https://hmgroup.com/sustainability/leading-the-change/awards-and-recognitions/ (last visited December 5, 2022) (noting recognition from the, Fashion Transparency Index, Textile Exchange Corporate Fiber & Materials Benchmark, and Ecogain Biodiversity Index).

[3] *See, e.g.,* Declaration of Jill Rembusch ("Rembusch Decl.") Ex. 1. (citing H&M, *Let's Change,* https://www2.hm.com/en_us/sustainability-at-hm/our-work/lets-change.html (last visited December 5, 2022) ("H&M's Sustainability Page - Let's Change") ("The industry has to change and someone has to take the lead. So, let's make that us."))

## SUMMARY OF ARGUMENT

Counts I – VIII allege violations of Missouri's Merchandising Practices Act ("MMPA") and California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedy Act ("CLRA"). These consumer fraud claims fail for the simple reason that the Conscious Choice collection uses "more sustainable materials" than those in comparable H&M garments – a comparison the Complaint does not refute or even address. Notwithstanding Plaintiffs' implausible interpretation of H&M's representation, these claims also fail for several other independent reasons.

Counts I – V independently fail because Plaintiffs received precisely what they bargained for when they bought their Conscious Choice garments and, as a result, have not suffered any cognizable loss under the MMPA.

Count VI also fails to allege 'unfair' activity under the UCL. Plaintiffs' claim that H&M's forthrightness and transparency regarding its use of "more sustainable" materials "does not confer any benefit to consumers" when such a practice should actually be encouraged for *all* retailers.

Count VIII alleging a violation of the CLRA is also barred as H&M has already made a correction available. H&M's Garment Collecting Program, implemented in 2013, lets consumers bring any unwanted clothes or textiles in for recycling, thereby resolving any of the alleged harms suffered by Plaintiffs.

Count IX for Unjust Enrichment is not only duplicative of the consumer deception claims, but also warrants dismissal for the independent reason that Plaintiffs received exactly what they bought – garments containing "at least 50% more sustainable materials."

Counts X and XI for Negligent Misrepresentation and Fraud fail not only because H&M has not misrepresented any material fact, but also because the Complaint contains none of the requisite details needed to articulate these claims. Aside from alleging that they bought a sweater

and a blouse, respectively, Plaintiffs do not state when they made their purchases or what representations they specifically relied upon.

Plaintiffs' requests for relief are also improper. They lack standing under Rule 12(b)(1) to seek injunctive relief since the harm they allege rests entirely upon an impossibility – namely, Plaintiffs purchasing *more* Conscious Collection clothing *without already* knowing everything they allege in the Complaint. Plaintiffs also lack standing to seek relief for products they did not purchase, much less on behalf of a nationwide class of consumers.

For these reasons, as set forth in further detail below, H&M respectfully requests that the Court dismiss the Complaint in its entirety pursuant to Rule 12(b)(1) and (6), and/or strike the nationwide class allegations pursuant to Rule 12(f).

## STATEMENT OF FACTS

### A. The Parties

H&M is a multinational retailer of fashion-forward clothing for men, women, and children offering direct-to-consumer sales through its website and numerous brick-and-mortar stores. At some unspecified time, Lizama entered an H&M store in St. Louis, Missouri and purchased an "H&M Conscious Choice Collection Knit Sweater Turquoise." Complaint, ¶ 14. At another unspecified time, Doten entered an H&M store in Arcadia, California and purchased an "H&M Conscious Choice Collection Double-breasted Satin Blouse Light Beige/Floral[.]" Complaint, ¶ 16. Plaintiffs ostensibly made these purchases after they "saw the labeling, advertising, [H&M's] website[4], and read the packaging," of the Conscious Choice products. Complaint, ¶¶ 14, 16.

---

[4]Although explicitly referenced and relied upon as a basis for Plaintiffs' allegations throughout the Complaint, the "Sustainability" section of H&M's website was not attached thereto and is being submitted contemporaneously with this Brief for the court's review. *See* Complaint, ¶¶ 6, 8–9, 12, 15, 17, 28–29, 31–32, 34–39, 44, 46–51, 53–59, 89–93, 100, 106–08, 120–24, 135–38, 148, 158–59, 161, 165, 168, 170, 171, 174, 176–77, 179–82, 184–85, 188, 194, 197, 215–17, 234, 242 ("the 'Sustainability' section of H&M's website, https://www2.hm.com/en_us/sustainability-at-hm.html, contained the following statement that the Products are 'conscious,' more 'sustainable,' and environmentally friendly . . . [and] [b]ased on these . . . representations . . . reasonable consumers, including Plaintiffs,

Plaintiffs seek to represent a nationwide class of consumers who purchased products in H&M's Conscious Choice collection (the "Products"), as well as two distinct subclasses – one comprised of Missouri consumers represented by Lizama and one comprised of California Consumers represented by Doten. Complaint, ¶¶ 63-65.

## B.    The Claims

Plaintiffs claim that H&M's Conscious Choice collection misleads consumers by making the following statements:

- "The shortcut to more sustainable shopping."
- "You can identify our most environmentally sustainable products by looking out for our green Conscious hangtags."
- "[P]ieces created with a little extra consideration for the planet. Each Conscious choice product contains at least 50% of more sustainable materials – like organic cotton or recycled polyester – but many contain a lot more than that. The only exception is recycled cotton, where we accept a level of at least 20%."
- "With new technological solutions and innovations, we're continually working to make our range even more sustainable."

Complaint, ¶¶ 29- 34. These statements are taken from the Sustainability section of H&M's website. *See* H&M Sustainability Page. The Complaint also includes images of hangtags detailing the composition of certain garments. *See e.g.*, Complaint, ¶ 32 ("59% Recycled polyester").

Based upon these representations, Plaintiffs claim that H&M misleads consumers into thinking these are "'Green' products, which are known to be more sustainable and environmentally

---

believe that the Products are made from more sustainable and environment friendly materials.") While matters outside of the pleadings are normally outside the scope of a motion to dismiss, the Court may review materials embraced by the allegations of the Complaint but not included therein. *See, e.g., Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010); *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115 (8th Cir. 2011). Federal courts frequently consider the contents of a website that are embraced by the pleadings in false advertising and related consumer deception cases to provide the entire context of allegedly deceptive or misleading statements. *S&H Distribution, LLC v. Meyer Laboratory, Inc.*, 2022 WL 5255323, at *3 (D.Neb., 2022); *In re NJOY, Inc. Consumer Class Action Litigation*, 2015 WL 12732461 (C.D. Cal. 2015); *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435 (N.D. Cal. 2020); *In re Facebook PPC Advertising Litigation*, 2010 WL 5174021 (N.D. Cal. 2010); *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) (collecting cases).

friendly." [5] Complaint, ℙ 35. Instead, Plaintiffs contend that "they are not made from sustainable and environment [sic] friendly materials that are less harmful and more beneficial to the environment." Complaint, ℙ 35. Plaintiffs argue that the Conscious Choice collection is not more sustainable because it "actually contains a higher percentage of synthetics that [sic] its main collection." Complaint, ℙ 44. The Complaint also takes specific issue with H&M's inclusion of recycled polyester as a "more sustainable material," asserting that using recycled polyester for clothing is "a one-way ticket to a landfill, incineration or being dumped in nature." Complaint, ℙ 41.

Yet, Plaintiffs struggle to offer a plausible definition or reasonable interpretation of H&M's representations; likely because H&M's representations leave no room for their claims. The proffered definition[6] in the Complaint is tautological – defining sustainable as: "made from sustainable and environment [sic] friendly materials that are less harmful and more beneficial to the environment." Complaint, ℙ 37. Notwithstanding, Plaintiffs assert that this is the understanding a "reasonable consumer" would ascribe to H&M's representations (Complaint, ℙ 56) and use this

---

[5] If anything, it is the Complaint itself that is misleading insofar as it deliberately misconstrues H&M's representations. Plaintiffs repeatedly allege that H&M tells consumers its Conscious Choice products are "environmentally friendly." *See* Complaint, ℙℙ 6, 12, 15, 17, 23, 28, 31, 32, 35. Yet, while H&M is committed to changing the fashion industry's negative impact on the environment (*see* H&M Sustainability Page – Let's Change ["While we love fashion, it has a huge impact on the environment. The industry has to change and someone has to take the lead"]), H&M has <u>never</u> claimed that its products are "environmentally friendly." In fact, H&M tells customers precisely the opposite, clearly providing consumers an honest and transparent assessment of its sustainability efforts on its Sustainability webpage. A closer reading of the Complaint reveals Plaintiffs' awareness of this fact, as they carefully omit any quotations around the phrase 'environmentally friendly'.

[6] Plaintiffs' suggested definition of "sustainable" is also implausible insofar as it is narrowly focused on environmental benefits. Indeed, the FTC notes that the term "has no single meaning to a significant number of consumers, and to some it conveys non-environmental characteristics[.]" See Rembusch Decl. Ex. 11; FED. TRADE COMM'N, GREEN GUIDES, STATEMENT OF BASIS AND PURPOSE 250, 258 (2012), https://bit.ly/2TQ7GL9. This multi-faceted understanding of sustainability is advocated by H&M as well. *See* Rembusch Decl. Ex. 5. (citing H&M Group, *2021 Sustainability Report* 6, 8, 34 https://hmgroup.com/wp-content/uploads/2022/03/HM-Group-Annual-and-Sustainability-Report-2021.pdf (last visited December 5, 2022) ("H&M Group 2021 Sustainability Report") (identifying sustainability strategy as including circular product development, investing in emerging companies, working towards a "net positive impact on biodiversity," fostering inclusive and diverse workplaces and communities, fostering opportunities for women and underrepresented groups, and promoting diversity and equality)).

definition to allege that the materials used in the Conscious Choice collection are not "less harmful and more beneficial to the environment."

## ARGUMENT

### A.    Standard of Review

Rule 12(b)(1) compels dismissal when a plaintiff fails to establish Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Plaintiffs bear the burden of establishing standing. *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply alleging legal conclusions will not satisfy this standard. *Cook v. ACS State & Local Sols., Inc*., 663 F.3d 989, 992 (8th Cir. 2011). Nor is it enough to allege facts showing a "sheer possibility" of liability. *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate. *Benton v. Merrill Lynch & Co*., 524 F.3d 866, 870 (8th Cir. 2008).

### B.    The Court Should Dismiss Counts I - VIII for Failure to State a Claim of Consumer Deception

Where putative class representatives assert claims under the consumer fraud statutes of multiple states, "[e]ach state's statute is unique and plaintiffs are required to plead the essential elements of each one." *In re General Motors Corp. Anti-Lock Brake Products Liability Litigation*, 966 F. Supp. 1525, 1536-37 (E.D. Mo. 1997), *aff'd Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999). Moreover, claims that sound in fraud and misrepresentation must be pled with particularity. Fed. R. Civ. P. 9(b); *Drobnak v. Andersen Corp*., 561 F.3d 778, 783 (8th Cir. 2009). Those strictures

apply to claims premised upon a course of fraudulent conduct, such as state consumer fraud statutes and claims based on deceptive trade practices. *In re General Motors Corp.*, 966 F. Supp. at 1536; *Blake v. Career Educ. Corp.*, 4:08-cv821, 2009 WL 140742, at * 2 (E.D. Mo. Jan. 20, 2009). "This higher degree of notice 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *Drobnak*, 561 F.3d at 783 (quoting *U.S. ex rel. Joshi v. St. Luke's Hosp*., 441 F.3d 552, 556 (8th Cir. 2006)).

Plaintiffs' various claims are premised upon the same conduct– namely, that H&M's representations regarding the Conscious Choice line are deceptive and misleading. Plaintiffs seek relief under the MMPA prohibiting "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. Plaintiffs also allege this conduct violates California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ("UCL"), False Advertising Law (Cal. Bus. & Prof. Code § 17500) ("FAL"), and Consumers Legal Remedy Act (Cal. Civ. Code § 1770(a)) ("CLRA"). As set forth below, these claims fail for several reasons and should be dismissed.

### 1.    Counts I – VIII Fail to Set Forth a Plausible Basis for Consumer Deception

Claims under the MMPA, UCL, FAL, and CLRA are governed by the "reasonable consumer" test. *See Hess v. Chase Manhattan Bank, U.S.A*., N.A., 220 S.W.3d 758, 773 (Mo. banc 2007) (quoting 15 C.S.R. 60-9.010(1)(C)); *Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time*, Inc., 68 F.3d 285, 289 (9th Cir. 1995)). If Plaintiffs cannot establish that a "reasonable consumer" would be misled, dismissal as a matter of law is warranted. Mo. Rev. Stat. § 407.025.1(2); *Haskell v. Time, Inc*., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (citing *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc*., 911 F.2d 242, 245 (9th Cir.

1990)) (because the "reasonable consumer" inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement "is such that no reasonable consumer could be misled" in the manner claimed by the plaintiff). Accordingly, "where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product . . . dismissal is appropriate." *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012); *see also In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 416 (9th Cir. 2016) (affirming dismissal of CLRA, FAL, and UCL claims).

The Complaint alleges that H&M's Conscious Choice "labeling and advertising were false, misleading, and deceptive" by tricking consumers into thinking the "the Products are a 'Conscious Choice,' more 'sustainable,' and environmentally friendly". Complaint, ⁋ 38. Yet, H&M does not represent that its products are sustainable – full stop. It does not even state that its clothes are "more sustainable" than competitors'. Rather, it clearly tells consumers that Conscious Choice garments contain "more sustainable materials" than regular materials. *See e.g.,* Complaint ⁋ 29 (Each Conscious choice product contains at least 50% of "**more sustainable materials**") (emphasis added); *see also., Sue Shin v. Campbell Soup Co.,* 2017 WL 3534991, at *4 (C.D. Cal. Aug. 9, 2017) (dismissing FAL, CLRA, and UCL fraudulent-prong claim because " '98% Fat Free' would not cause a reasonable consumer to believe that the Products are 'healthy.' [Rather] those statements indicate just what they say: e.g., that they contain 25% less sodium, or 33% less sodium, than the comparative product.") (internal quotations omitted).

Plaintiffs' initial premise is therefore inaccurate. No reasonable consumer would understand H&M's representations to convey that the Conscious Choice clothing line is inherently sustainable; or that its clothing is environmentally friendly by any metric they choose to apply. Rather, a reasonable reading of H&M's advertisements is that the Conscious Choice collection

uses materials that are *more* sustainable than those in comparable garments.[7] Because it refuses to acknowledge the actual comparison H&M makes, the Complaint sets forth an implausible basis for its claims of deception.

Where the Complaint does acknowledge the comparative value of H&M's representations, it employs an implausible standard. Plaintiffs claim that clothing comprised of recycled polyester is not "more sustainable" because it is primarily sourced from recycled polyethylene terephthalate ("PET") bottles. Complaint, ¶ 41. Plaintiffs further claim that unlike the "bottle-to-bottle" recycling of PET plastics, which can be done "many times if [the bottles] are part of clean, separated waste streams[,]" turning PET plastics into clothing is "a one-way ticket to a landfill, incineration or being dumped in nature." *Id.*

This argument is premised upon an inapposite comparison and an unreasonable leap in logic. No reasonable consumer would consider H&M's statement that recycled polyester is a "more sustainable material" by comparing clothing to PET bottles. Rather than comparing whether recycling polyester is "more sustainable" when the end product is a PET bottle (or an article of clothing), the relevant comparison is whether one garment using recycled polyester is more sustainable than another garment using non-recycled (also known as virgin) polyester. Crucially, Plaintiffs do not claim that Conscious Choice collection materials are not "more sustainable" than their counterparts (i.e virgin polyester, or non-organic cotton). Accordingly, the Complaint fails to allege a plausible basis upon which a reasonable consumer could be misled.

Moreover, H&M provides consumers with information supporting this appropriate comparison. *See* Rembusch Decl. Ex. 6. (citing H&M Group, *Sustainability Disclosure*, 34 (2001)

---

[7]Plaintiffs' own definition of "sustainable" necessarily acknowledges the relativistic value implicit in the use of this term. *See* Complaint, ¶ 37 (defining sustainable as: "made from sustainable and environment [sic] friendly materials that are **less** harmful and **more** beneficial to the environment.") (Emphasis added.)

https://hmgroup.com/wp-content/uploads/2022/03/HM-Group-Sustainability-Disclosure-2021.pdf (last visited December 5, 2022) ("2021 Sustainability Disclosure") (according to the Higg Materials Sustainability Index, recycled polyester has a significantly lower carbon footprint than polyester from conventional sources)); *see also* Rembusch Decl. Ex. 4. (citing H&M, *Our More Sustainable Materials*, https://www2.hm.com/en_us/sustainability-at-hm/our-work/innovate/all-stars.html (last visited December 5, 2022) ("H&M Sustainability Page - Let's Innovate") (using recycled polyester keeps plastic waste out of landfills and the natural environment; reuses a material that has already been produced; and can be recycled to make other products like insulation materials)).

Consumers are also inundated with information from numerous publications contextualizing H&M's representations and confirming the logical conclusion Plaintiffs refuse to acknowledge: that recycling existing polyester, rather than using virgin polyester, stops new fossil-based synthetic fibers from entering the system in the first place and ensures that those PET which are not "part of clean, separated waste streams" are still recycled rather than "dumped into nature." Complaint, ¶ 41. In fact, the use of recycled polyester has environmental benefits beyond the PET waste stream. Using recycled polyester instead of virgin polyester leads to:

- 26% less water use – the equivalent of 9.1 billion liters, or the drinking water needs of 8.3 million people for one year;

- 28% less fossil fuel use – the equivalent of 34.8 billion megajoules, or the annual use of 796,202 U.S. households;

- 24% less Carbon Dioxide use – the equivalent of 1.1 million tons of $CO_2$, or 4.5 billion kilometers driven in an average sized car.

*See* Rembusch Decl. Ex. 10. (citing Textile Exchange, *Materials Impact Dashboard 2021: Polyester*, https://mci.textileexchange.org/dashboard/ (last visited December 5, 2022) ("Textile Exchange Materials Impact Dashboard")).

Nor can Plaintiffs salvage their claim by reference to the percentages of synthetics in H&M's clothing. Plaintiffs assert that the Conscious Choice collection is not more sustainable because it "actually contains a higher percentage of synthetics than [sic] its main collection." Complaint, ⁋ 44 (citing to Changing Markets Foundation, *Synthetics Anonymous: Fashion Brands' Addiction to Fossil Fuels Report* 50 (2021) http://changingmarkets.org/wp-content/uploads/2021/07/SyntheticsAnonymous_FinalWeb.pdf. Yet, that same report demonstrates that the overall amount of virgin synthetics in the Conscious Choice collection is *less* than H&M's main collection. *See* Rembusch Decl. Ex. 9 at § 3.8 (p. 27 of 60). The replacement of virgin synthetics with recycled synthetics uses less water and fossil fuels, saves energy, and prevents the introduction of additional waste into consumption streams. *See* Textile Exchange Materials Impact Dashboard.

As a result, the complaint fails to set forth cognizable claims under these consumer deception statutes and, because Counts I – VIII are premised upon a reasonable consumer being misled, they should be dismissed.

### 2.      Count III Does Not Plead an Actionable Omission Under the MMPA

Count III seeks to set forth a distinct MMPA violation based upon omission rather than misrepresentation. An omission under the MMPA is actionable when there is a "failure by a person to disclose material facts known to him/her...." 15 CSR § 60-9110.

While admitting that they reviewed H&M's website (Complaint, ⁋⁋ 17, 19), Plaintiffs profess ignorance as to the material composition of the items in the Conscious Choice clothing and/or whether such materials are "more sustainable" than comparable garments using ordinary materials. *See* Complaint, ⁋⁋ 15, 17, 53. This assertion is belied by the context and content on H&M's hangtags and website, as well as the numerous other publicly available reports referenced by the Complaint.

The Complaint itself is replete with images of Conscious Choice hangtags identifying the exact composition of certain garments. *See e.g.,* Complaint, ⁋ 32 ("59% Recycled polyester"). While omitted from the Complaint, every single one of H&M's garments is accompanied by a full list of the materials used. As clearly stated by H&M:

> We believe that being transparent is an important part of becoming more sustainable. Sharing knowledge about our business and how we make our clothes gives you more power as a customer. The more you know, the more informed decisions you can make. We want you to feel confident that the products you buy from us are made both responsibly and sustainably.

> When you click on an H&M product, you can find out which materials the product is made from, which countries it was produced in, and which suppliers and factories we partnered with to make it. You can find all this, as well as information on how to recycle your clothes, in our Product Background section on the product's page. The only exception is products made before our tracking system was developed.

*See* Rembusch Decl. Ex. 2. (citing H&M, *Let's be transparent*, https://www2.hm.com/en_us/sustainability-at-hm/our-work/transparent.html (last visited December 5, 2022) ("H&M Sustainability Page – Let's Be Transparent")). All consumers are thus well aware of the composition of each garment offered for sale by H&M.

As to the "true nature of the clothing's materials," H&M specifically tells consumers why certain materials are preferable to others, and the environmental impacts[8] of each. H&M's publicly available Material Categorization Report compares materials within a material family (i.e., recycled polyester versus virgin polyester) and explains how and why H&M prioritizes certain materials. *See* Rembusch Decl. Ex. 7. (citing *H&M Group Material Categorisation* 3-4 (2021)

---

[8]H&M also makes its consumers aware of the environmental impacts of its business more broadly. *See* Rembusch Decl. Ex. 3. (citing H&M, *Close the Loop*, https://www2.hm.com/en_us/sustainability-at-hm/our-work/close-the-loop.html (last visited December 5, 2022) ("H&M Sustainability Page – Let's Close the Loop") ("less than 1% of the materials used to make clothes get recycled each year. This means that thousands of tons of textiles end up in landfills. By reusing or recycling fashion, we can turn that around.")).

https://hmgroup.com/wp-content/uploads/2021/11/HM-Group-Material-Categorisation-2021-1.pdf (last visited December 5, 2022) ("H&M Material Categorization Report")).

Moreover, while H&M includes details regarding the environmental impacts of utilizing recycled polyester, it is by no means the *only* repository for this information. As evidenced by the Complaint, this data is widely available and readily accessible. *See* Complaint, ¶¶ 40-41, fn. 12, 13 (collecting articles). Thus, consumers are easily able to not only ascertain the specific makeup of their garments, but to independently verify whether H&M's representations comport with their own interpretations.

There are no material facts regarding the composition or environmental impact of H&M's Conscious Choice materials that are not already known to the reasonable consumer.  Accordingly, the Complaint fails to identify an actionable omission by H&M and Counts III and IV should be dismissed for this reason as well.

### 3.    Plaintiffs Have Not Suffered Any Ascertainable Loss Under the MMPA

A plaintiff suffers an ascertainable loss under the MMPA when she does not receive the "benefit of the bargain." *Thompson v. Allergan USA, Inc*., 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014). Under this rule, if the buyer purchases and retains the product, she is only deprived of its benefit if "the value of the product as represented" is less than what she "received." *Id*. Plaintiffs allegations fall short of this requisite standard in numerous respects.

Plaintiffs received precisely what they bargained for. Lizama purchased a knit sweater and Doten purchased a satin blouse. Complaint, ¶¶ 14, 16. They bought these products with the understanding that they were comprised of materials that qualified for inclusion in H&M's Conscious Choice collection by "contain[ing] at least 50% or more sustainable materials – like organic cotton or recycled polyester[.]" Complaint, ¶ 29. Plaintiffs do not, and cannot, claim that these garments were not comprised of such materials. *See, e.g., Polk v. KV Pharm. Co.,* 2011 WL

6257466, at *5 (E.D. Mo. Dec. 15, 2011) (dismissing MMPA claim because "Plaintiff has not alleged the Medication was anything other than what it has always purported to be.")

Relatedly, "[i]t is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." *O'Neil v. Simplicity, Inc.,* 574 F.3d 501, 503 (8th Cir. 2009) (quoting *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999)). "It is not enough to allege that a product line contains a defect or that a product is at risk of manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect." *Id.* (citation omitted). Here, Plaintiffs do not allege that their H&M clothes have actually had any negative environmental impact or are in any way defective. There is no indication that they are unsuitable for wear or that they have contributed to any landfill waste or microplastics in the ocean. To the contrary, , it appears from the Complaint that both garments are still hanging in Plaintiffs' respective closets.

In short, the Complaint does not contain any allegations that the garments Plaintiffs purchased were not worth what they paid (or were otherwise defective). Absent such an allegation, Plaintiffs have failed to properly plead the damages required by Missouri's benefit-of-the-bargain rule. *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2011 WL 6740338, at *3-4 (W.D. Mo. Dec. 22, 2011) (barring claim under MMPA for consumers who purchased and completely used the products and received the full benefit of their bargain); *Mikhlin v. Johnson & Johnson*, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014) ("While [plaintiffs] contend that they would not have purchased and used Johnson's® Baby Powder had they known about the increased ovarian cancer risk, the Court holds that "these Plaintiffs received 100% use (and benefit) from the products and have no quantifiable damages".)

To demonstrate their loss, Plaintiffs allege that they paid "a premium to purchase the Products…above comparable alternatives[.]" Complaint, ¶¶ 12, 57. Yet, Plaintiffs have alleged no facts to suggest this is true. The Complaint is devoid of any facts detailing a comparison of H&M's 'sustainable' products against its other products, or even comparing H&M's products against those of other retailers. Aside from vague references to a nebulous "premium," Plaintiff has articulated no facts that support this conclusory claim. In other words, their loss is not ascertainable. *See Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994) ("The only value indicated is the price purchaser paid for the spa. This is not the proper measure of damages.") Unlike *Sunset Pools,* Plaintiffs have not even alleged how much they paid for the clothing they purchased. Absent facts that create a plausible basis for calculating the price premium, the Complaint does not plead an ascertainable loss and Plaintiff has failed to state an MMPA claim for this additional reason. *Grawitch v. Charter Commc'ns, Inc*., 750 F.3d 956, 960 (8th Cir. 2014) (affirming dismissal of MMPA claim where plaintiffs failed to allege that they "paid extra" for the allegedly deceptively advertised product.)

This is not a case where H&M represented that its products contained materials that they did not. Instead, H&M told Plaintiffs precisely what materials were in the products they purchased, specifically identified those materials as those it considered "sustainable," and explained *why* it used the term "sustainable" to describe those materials. Where "consumers are given all the information they need to make an informed decision," there is no actionable claim under the MMPA. *Kelly v. Cape Cod Potato Chip Co*., 81 F. Supp. 3d 754, 762 (W.D. Mo. 2015) (dismissing MMPA claim based upon "all natural" representation since "if Plaintiff wished to avoid products containing the challenged ingredients, Defendants provided her with all the information she needed to do so.")

Accordingly, Counts I – V alleging violations of the MMPA must be dismissed on this additional independent basis.

### 4.    Count VI Fails to Adequately Plead Unfair Conduct Under the UCL

Count VI under the unfair prong of the UCL is duplicative of Plaintiffs' other claims insofar as it asserts H&M's "labeling [of] Products as a 'Conscious Choice,' more 'sustainable,' and environmentally friendly when they are not" harms suffered by consumers. Complaint, ⁋ 170. "[W]here the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) (citations omitted); *see also, e.g., Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016). As a result, Plaintiffs' unjust enrichment claim for unfair conduct must be dismissed.

Separately and notwithstanding, Plaintiffs' claim incorrectly assumes that H&M's marketing causes injuries that outweigh any benefits. *Rojas-Lozano v. Google, Inc*., 2016 WL 429794, at *10 (N.D. Cal. Feb. 3, 2016) ("A business practice is unfair within the meaning of the UCL if it . . . [*inter alia*] causes injury to consumers which outweighs its benefits.") Plaintiffs argue that there is little or no benefit to H&M's forthrightness and transparency regarding its use of "more sustainable" materials. Ironically, Plaintiffs' position would lead to more obfuscation and discourage H&M's practice of openly disclosing its progress towards complete sustainability. In contrast, Plaintiffs have failed to allege a cognizable injury. Plaintiffs claim  they have overpaid and received "products of lesser standards than what they reasonably expected to receive." Complaint, ⁋ 170. Yet, as discussed in section (B)(3) above, Plaintiffs have received the full benefit

of the bargain and have not been harmed by their purchases. As such, the Complaint fails to establish any unfair conduct sufficient to support this claim.

> **5.     Plaintiffs Fail to Plead a Violation of the Green Guides in Support of Counts V and VI**

Counts V (Violation of the MMPA) and VI (UCL) are premised, in part[9], upon a violation of the Federal Trade Commission's ("FTC") Guides for the Use of Environmental Marketing Claims ("Green Guides"). Complaint, ¶¶ 147, 187. Rather than prohibiting H&M's conduct, the Green Guides underscore the propriety of H&M's statements.

The Green Guides prohibit "[u]nqualified general environmental benefit claims" without "clear and prominent qualifying language that limits the claim to a specific benefit or benefits." 16 C.F.R. § 260.4(b); *but see, id.* at (c) ("[m]arketers can qualify general environmental benefit claims to prevent deception about the nature of the environmental benefit being asserted.")

H&M has not made any unqualified general environmental benefit claims. Rather than representing the Conscious Choice collection is unconditionally sustainable, it has clearly and carefully qualified its use of such terms. In the same way that the statement "'Eco-friendly: made with recycled materials' would not be deceptive" if it was primarily comprised of recycled material and those materials make the product "more environmentally beneficial overall" (16 C.F.R. § 260.4(d); Complaint, ¶ 27), H&M's statement that that "[e]ach Conscious Choice product contains at least 50% more sustainable materials – like organic cotton or recycled polyester" is not deceptive because those percentages are accurate and the use of those materials is more environmentally beneficial than their virgin or non-organic counterparts (something the Complaint does not contest.)

---

[9]To the extent that Count V is premised upon a violation of the FAL or CLRA, it must be dismissed for the same reasons warranting dismissal of those underlying claims.

Nor has H&M run afoul of the FTC's admonishment not to overstate an environmental attribute or benefit by "imply[ing] environmental benefits if the benefits are negligible." 16 C.F.R. § 260.3(c). Garments are only included in H&M's Conscious Choice collection if the *majority*[10] of their materials are "more sustainable." Complaint, ¶ 29. By not only making clear what the basis for its "more sustainable materials" representation is, but specifically identifying the proportion of those materials ("59% Recycled polyester" [Complaint, ¶ 32]), explaining why certain materials are preferable to others and the environmental impacts of each (*see* H&M Material Categorization Report), H&M specifically and accurately conveys the environmental impact of each "more sustainable material."

As H&M has substantiated and qualified its use of the term 'sustainable,' the Complaint fails to allege a violation of the Green Guides.

### 6.     Count VIII for Violation of the CLRA is Barred

CLRA damages are not recoverable where the defendant has offered an appropriate "correction, repair, replacement, or other remedy of the goods and services." Cal. Civ. Code § 1782(c); *see also id.* §§ 1782(b), 1784. H&M has done exactly that; its Garment Collecting Program lets consumers "[b]ring any unwanted clothes or textiles, by any brand and in any condition" and (1) re-marks them as secondhand clothing; (2) recycles them into other products ("such as [H&M's] collections or cleaning cloths"); (3) or recycles them for use as other products ("clothes and textiles are shredded into textile fiber sand used to make, for example, insulation materials"). *See* H&M Sustainability Page – Let's Close the Loop. Consumers even receive a

---

[10]The only exception – recycled cotton – is specifically called out by H&M, and consumers are provided an explanation for why this is the case. *See* Complaint, ¶ 34 ("The only exception is recycled cotton, where we accept a level of at least 20%. The quality of recycled cotton makes it tricky to include a higher amount."); *see also,* Rembusch Decl., Ex. 8 (citing H&M, *Conscious Choice Explained,* https://www2.hm.com/en_us/sustainability-at-hm/our-products/explained.html (last visited December 5, 2022))

"thank-you coupon to use toward [their] next purchase." *Id.* The Garment Collecting Program, in effect since 2013, addresses and resolves[11] the exact harms that Plaintiffs and the proposed class have ostensibly suffered. Accordingly, Count VIII is barred.

## C. Count IX for Unjust Enrichment is Duplicative and Fails to Identify a Cognizable Injury

Plaintiffs' claim for unjust enrichment does not specify whether it is brought under Missouri law, California law, or both. Notwithstanding, the Complaint fails to state a claim under any applicable law.

As a preliminary matter, Plaintiffs' unjust enrichment claim is based on the same nonactionable conduct as their statutory claims and should therefore be dismissed as duplicative. *See Carter v. Alcon Labs., Inc.*, 2014 WL 989002, at *5 (E.D. Mo. Mar. 13, 2014) (dismissing unjust enrichment claim because it was based on the same underlying conduct as the nonactionable MMPA claim); *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 196 (Mo. banc 2014) (same); *Sue Shin v. Campbell Soup Co.*, 2017 WL 3534991, at *8 (C.D. Cal. Aug. 9, 2017) (dismissing unjust enrichment claim as "based on the same allegedly deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales conduct" as UCL, FAL, and CLRA claims.)

Moreover, under Missouri law, "[t]here can be no unjust enrichment where the parties receive what they intend to obtain." *See Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo.. App. S.D.2003); *see also Howard v. Turnbull*, 316 S.W.3d 431, 438 (Mo. App. W.D. 2010) (finding no unjust enrichment where plaintiff entered into a voluntary and deliberate

---

[11]H&M Group's 2021 Sustainability Report, available on its website along with the Products, states that despite COVID-19 disruptions, H&M "gathered 15,944 tonnes of…post-consumer garments and home textiles for reuse and recycling, making it easier for consumers to recycle and demonstrating that these resources have value…50-60% [of garments were] sorted for re-wear and reuse and 35-45% recycled to become products for other industries or made into new fibres. We continued collaborating with partners to make use of the remaining 3-7% that, as a last resort, had to be disposed of another way, prioritising incineration for energy recovery and never sending textiles to landfill." H&M Group 2021 Sustainability Report at 43.

transaction and received "precisely what he bargained for.") Plaintiffs intended to obtain various items of clothing and did receive those items. Accordingly, Plaintiffs cannot establish a claim for unjust enrichment. *Hennessey v. Gap, Inc.*, 2022 WL 4447399, at *8 (E.D. Mo. Sept. 23, 2022) ("when someone pays $7.49 for a product worth $7.49, no one is unjustly enriched.")

Similarly, under California law, the mere fact that H&M received the purchase price of the Conscious Choice clothes from Plaintiffs is not of itself sufficient to warrant restitution. *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal.App.4th 151, 171 n. 23 (2001) (mere fact that a person obtains a benefit from another is not of itself sufficient to require that person to make restitution therefor). Restitution is only required if there was wrongful conduct on the part of the party receiving the benefit. *See id.*; *County of San Bernardino v. Walsh*, 158 Cal.App.4th 533, 542–43 (2007). As set forth herein, H&M's conduct was not wrongful and therefore Plaintiffs' unjust enrichment claim must be dismissed.

## D.     Plaintiffs' Claims for Negligent Misrepresentation (Count X) and Fraud (Count XI) are Fatally Deficient

Both California and Missouri require the same basic elements for a fraud claim. Namely, both claims require a plaintiff to show, *inter alia*, that the defendant represented something to be true when it was not. *See Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498 (2007); *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 973 (W.D. Mo. 2021) (citing *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007)). As Plaintiffs have failed to establish, or even allege, that H&M's representations were not factually accurate and thus failed to allege any misrepresentation or omission by H&M, Counts X and XI must be dismissed.

Separately, Plaintiffs fail to satisfy the heightened pleading standard for these claims under Rule 9(b) by failing to plead any specific facts regarding their purchase of the Conscious Choice

products. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997) (to satisfy the heightened pleading requirement under Rule 9(b), a plaintiff must allege the "who, what, when, where, and how [of the fraud]: the first paragraph of any newspaper story."); *Beckman v. Arizona Canning Co., LLC*, 2017 WL 4227043, at *5 (S.D. Cal. Sept. 21, 2017) (dismissing fraud claim because "Plaintiffs merely allege they purchased one or more cans of Sun Vista beans from retail stores in California.") Plaintiffs' general allegations that they purchased Conscious Choice garments, saw the labeling and advertisements, and viewed H&M's website – without specifying when or what specific representations they saw – is insufficient to state a cognizable claim.

**E.**   **Plaintiffs' Requests for Relief Should be Dismissed or Stricken to the Extent They Lack Article III Standing**

**1.**   **Plaintiffs Lack Standing to Seek Injunctive Relief**

To establish Article III standing for injunctive relief, the Complaint must set forth an injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 564 (quoting *L.A. v. Lyons*, 461 U.S. 95, 102 (1983)). A plaintiff "must show that she is likely to suffer some future injury to obtain injunctive relief." *Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011).

Counts I, VI, VII, and VIII "seek an order of this Court enjoining Defendant from continuing" to market its Conscious Choice collection in the current manner. *See* Complaint, ¶¶ 97, 168, 176, 184, 196, 207, 221, 225. Where a plaintiff is "aware of Defendants' alleged deception and . . . is not likely to purchase the [product] as [it] exist[s] at present," she "lacks standing to seek injunctive relief." *Kelly v. Cape Cod Potato Chip Co.*, Inc., 81 F. Supp. 3d at 762-63. As in *Kelly*, Plaintiffs are now keenly aware of the environmental impacts of the materials used in the

Conscious Choice collection and in no danger of being misled in the future. *See* Complaint, ¶¶ 39-44. Plaintiffs' allegation that they "would purchase the Products in the future if Defendant changed the composition of the Products" (Complaint, ¶¶ 14, 17) is insufficient to confer standing for injunctive relief. Accordingly, Plaintiffs lack standing to obtain injunctive relief.

### 2.    Plaintiffs Lack Standing to Seek Relief for Products They Did Not Purchase

Plaintiffs state that they each bought one article of clothing from H&M's Conscious Choice line and suffered damages by paying a "premium." Complaint, ¶¶ 12, 17, 19, 57. Notwithstanding, Plaintiffs seek to recover damages for hundreds of other products in the Conscious Choice collection and "reserve the right to amend this Complaint to include any additional items sold by H&M that are within the scope of this Complaint." Complaint, ¶ 4, fn. 1. Yet, because Plaintiffs' have not purchased any of these other garments, they have suffered no injury with respect to those garments and thus lack standing to seek relief on this basis.

That Plaintiffs seek to represent others who may have purchased other products in the collection is insufficient to confer standing. "[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Allee v. Medrano*, 416 U.S. 802, 828-829 (1974) (internal quotations omitted).

Once again, the Eighth Circuit's decision in *Kelly* is instructive. There, the Court found that the plaintiff lacked Article III standing as to twelve of the sixteen varieties of defendant's chips, because the plaintiff only purchased four varieties and was thus neither personally nor actually harmed as to those other twelve varieties. *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015). The same conclusion is mandated here. Plaintiffs lack standing to seek relief for garments they did not purchase.

### 3.        Plaintiffs Are Not Entitled to Equitable Relief

It is well established that "equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009); *see Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) (holding equitable remedies "are 'subject to fundamental equitable principles, including inadequacy of the legal remedy.") (citation omitted). "For this reason, courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020).

Counts VI and VII seek equitable relief on the basis that "[w]ithout equitable relief, Defendant's unfair, deceptive, untrue, and misleading practices will continue to harm Plaintiff Doten and the California Subclass." Complaint, ¶¶ 168, 176, 184, 196, 207. Count IX also seeks restitution as part of Plaintiffs' Unjust Enrichment claim. Complaint, ¶ 231. Yet Plaintiffs fail to "explain why or how the requested . . . damages are an inadequate remedy justifying restitution damages." *Andino v. Apple, Inc.*, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021). Other than making a request for equitable relief, Plaintiffs have offered no facts indicating why their requested damages are inadequate. As such, their request for equitable relief should be dismissed.

### 4.        Plaintiffs Nationwide Class Claims Must be Dismissed or Stricken

The Eighth Circuit has held that "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion." *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012). Similarly, "Rule 12(f) may justify striking class allegations that facially fail to meet the requirements to certify a class under Rule 23." *In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2017 WL 3863866, at *4 (W.D. Mo. Aug. 3, 2017).

Plaintiffs seek to bring an unjust enrichment claim on behalf of a nationwide class. *See* Complaint, ⁋ 63, Count IX ("Unjust Enrichment; As to the National Class…"). The elements of this claim vary widely among the laws of each state, and the Complaint itself does not specify under which state's laws the claim is brought. *See id.* at *5 ("Plaintiffs fail to identify any source of law that would serve as a basis for a national unjust enrichment class"); *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) ("Plaintiffs' failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled"). There are significant outcome-determinative conflicts that will preclude certification of any nationwide class in this case.

"As a fundamental matter, states vary on the number of elements that must be met to establish an unjust enrichment claim. Some states require a showing of five elements, while other states vary from one to four elements." *True v. Conagra Foods, Inc.*, 2011 WL 176037, at *9 (W.D. Mo. Jan. 4, 2011) (citation omitted) ("[p]erhaps the greatest discrepancy in state law is found in Plaintiffs' claim for unjust enrichment" and "[c]ourts have repeatedly recognized that 'the law of unjust enrichment varies materially from state to state") (citing *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 697 (N.D. Ga. July 22, 2008) (citing cases)); *see also Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008) (finding "there are differences nationwide in the very definition of unjust enrichment and its availability as a remedy... [and] [b]ecause of such variations, federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment.") The material variations in the laws of each consumer's home state will irreversibly impose needless and undue expense on H&M to defend against these nationwide class claims, and H&M respectfully requests that the Court address these

issues at the outset of the litigation to either dismiss these the nationwide class allegations under Rule 12(b)(6) or strike them from the Complaint under Rule 12(f).

## **CONCLUSION**

For all the foregoing reasons, H&M respectfully requests that the Court dismiss the Complaint in its entirety.

December 6, 2022

By: ___*/s/ Jill R. Rembusch*_____
       Jill Rembusch
       **HEIN SCHNEIDER & BOND P.C.**
       2244 S. Brentwood Blvd.
       St. Louis, MO 63144
       Tel.: (314) 863-9100
       jrr@hsbattorneys.com

       Staci Jennifer Trager (*pro hac vice* pending)
       **NIXON PEABODY LLP**
       300 S. Grand Avenue, Suite 4100
       Los Angeles, CA  90071-3151
       Tel.: (213) 629-6041
       strager@nixonpeabody.com

       Erin T. Huntington (*pro hac vice* pending)
       **NIXON PEABODY LLP**
       677 Broadway
       Albany, New York 12207
       Tel.: (518) 427-2650
       ehuntington@nixonpeabody.com

Carlo F. Bustillos (*pro hac vice* pending)
**NIXON PEABODY LLP**
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel.: (415) 984-8448
cbustillos@nixonpeabody.com

*Attorneys for Defendant H&M Hennes &*
*Mauritz LP*

## CERTIFICATE OF SERVICE

The foregoing was electronically filed with the Court this 6th day of December, 2022, and served via the Court's ECF system upon all counsel of record.

By:   */s/ Jill R. Rembusch*