UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ABRAHAM LIZAMA, et al.,          )
                                 )
        Plaintiffs,              )
                                 )
    vs.                          )          Case No. 4:22 CV 1170 RWS
                                 )
H&M HENNES & MAURITZ LP,         )
                                 )
        Defendant.               )

## MEMORANDUM AND ORDER

Abraham Lizama purchased a sweater from defendant retailer H&M's "conscious choice" collection.  According to Lizama, he believed this meant his sweater was made using "more sustainable and environmentally friendly" manufacturing practices.  According to Lizama, however, this product is not "environmentally friendly," and he felt so misled by the representation that he now brings a nationwide putative class action over the alleged misrepresentation.

Lizama asserts claims under Missouri's Merchandising Practices Act (MMPA) as well as claims for unjust enrichment, negligent misrepresentation, and fraud.  He asks this Court to name him as the class representative to prosecute the MMPA and Missouri state law claims on behalf of a subclass of Missouri residents who purchased any "conscious choice" product from H&M (the Missouri subclass), in addition to naming him as one of two class representatives to

prosecute nationwide class claims for unjust enrichment, negligent

misrepresentation, and fraud on behalf of a nationwide class of consumers who did

the same (the nationwide subclass).

Mark Doten is the second class representative named in the complaint.  He is

a California resident who made a similar "conscious choice" purchase from H&M

in California.  He brings claims similar to Lizama under California law and seeks

to represent California residents who purchased "conscious choice" items in

California (the California subclass) as well as the nationwide subclass.

H&M moves to dismiss the complaint and/or strike the class action

allegations for a litany of reasons: the complaint fails to adequately allege the

elements of the state law claims; plaintiffs lack Article III standing to seek

injunctive or equitable relief and to seek relief for products they did not purchase;

the nationwide class allegations should be stricken because there is no possibility

that a nationwide class of state law fraud claims will ever be certified; and, this

Court lacks personal jurisdiction over the non-resident's claims.  Plaintiffs have

responded to each of these arguments, and the issues are fully briefed.  For the

reasons set out below, plaintiffs' complaint is dismissed.

## Discussion

## Personal Jurisdiction

"Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation marks omitted).  The plaintiffs "bear the burden of establishing a prima facie showing of jurisdiction," and the Court views the facts in the light most favorable to the plaintiff.  *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021).  The evidentiary showing required at this stage is minimal.  *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.,* 42 F.4th 948, 951 (8th Cir. 2022).  "A prima facie showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Id.* (cleaned up).  In addition, the Court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits."  *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

Personal jurisdiction takes two forms: "General (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Co.,* 137 S. Ct. 1773, 1780 (2017) (BMS)  (cleaned up).  "General jurisdiction exists where a defendant is

essentially at home in the forum state, whereas specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims, namely those that arise out of or relate to the defendant's contacts with the forum." *Zazzle*, 42 F.4th at 952 (cleaned up).

Here, there are no allegations or argument that H&M is subject to general jurisdiction in Missouri as it is not a Missouri corporation and does not have its principal place of business here.  Moreover, Doten alleges no connection to Missouri, and no connection to Missouri by any of the out of state putative class members is alleged, either.  Therefore, to comport with due process H&M must have "certain minimum contacts with [Missouri] and [plaintiffs'] claims [must] arise out of or relate to [H&M's] contacts." *Kaliannan*, 2 F.4th at 733 (cleaned up).

In this case, there is no dispute that Doten's claims do not arise out of or relate H&M's contacts with Missouri because he alleges that he is a California resident who made a "conscious choice" purchase in California.  For this reason, H&M moves to dismiss the claims of Doten, the California subclass, and all members of the nationwide subclass who purchased goods outside of Missouri for lack of personal jurisdiction.  Under *Zazzle,* 42 F.4th at 951-52 (applying *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024

(2021), and *BMS*, this Court lacks personal jurisdiction over H&M with respect to the claims brought by Doten.

In opposition to dismissal, plaintiffs ignore the fact that Doten's claims have no connection to Missouri and argue only that *BMS* does not apply to class actions, citing district cases from this circuit holding that *BMS* does not apply to the claims of absent class members in a class action context.  *See Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1352-53 (E.D. Mo. 2020); *Krumm v. Kittrich Corp.*, 4:19 CV 182 CDP, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019); *Swinter Group, Inc. v. Serv. of Process Agents, Inc.*, 4:17 CV 2759 RLW, 2019 WL 266299 (E.D. Mo. Jan. 18, 2019); *Moore v. Compass Group USA, Inc.*, 4: 18 CV 1962 RLW, 2019 WL 4723077 (E.D. Mo. Sept. 26, 2019).  But these cases are inapposite because Doten is a named plaintiff in this lawsuit, not an absent class member.  As such, this Court must have personal jurisdiction over his claims against H&M for him to proceed in this Court.  *See Dack v. Volkswagen Group of America*, 565 F. Supp. 3d 1135, 1141–42 (W.D. Mo. 2021) (distinguishing the above authorities because the Court must have personal jurisdiction over the claims brought by all named plaintiffs in a putative class action, even if it need not have personal jurisdiction over claims of absent class members).

Nor can the Court exercise pendant jurisdiction over Doten's claims by virtue of its jurisdiction over Lizama's claims, as the Court lacks personal

jurisdiction over any single claim brought by Doten and the California subclass against H&M.  "For there to be specific jurisdiction, there must be an affiliation between the forum and the underlying controversy, and where that connection is absent, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Zazzle*, 42 F.4th at 952 (cleaned up). Therefore, even regularly occurring sales of "conscious choice" products to consumers in Missouri cannot justify the existence of jurisdiction over Doten's claims because they are unrelated to those sales.  *See id.*; *Dack*, 565 F. Supp. 3d at 1142; *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870 (N.D. Ill. 2017) ("once a court has personal jurisdiction over a defendant as to one claim brought by the plaintiff, the court may assert jurisdiction over additional claims brought by *that* plaintiff.") (emphasis added).

As this Court lacks personal jurisdiction over H&M with respect to claims brought by Doten, all claims brought by Doten (Counts VI, VII, VIII, and Counts IX, X, and XI to the extent brought by Doten) are dismissed for lack of personal jurisdiction.

The Court need not, and therefore does not, reach the personal jurisdiction issue with respect to the claims of putative nonresident absent class members raised by H&M in its brief because all remaining claims brought by Lizama are subject to dismissal for the reasons set out below.

6

## Failure to State a Claim

H&M moves to dismiss Lizama's Missouri statutory and common law claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  In ruling on such a motion, I must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 657 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570) (2007)); *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795 (8th Cir. 2021) (same).

A claim is facially plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 657.  This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Specific facts are not required; the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Legal conclusions "must be supported by factual

allegations." *Id.* at 679.  Absent such support, the Court "is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint."  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citations and internal quotations omitted).

H&M also contends that Lizama's claims sound in fraud and are therefore subject to additional pleading requirements under Fed. R. Civ. P. 9(b), which requires "a party must state with particularity the circumstances constituting fraud or mistake."  This means that a plaintiff must "specify the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts" by explaining the "who, what, when, where and how surrounding the alleged fraud" and what the defendant "obtained as a result." *OmegaGenesis Corporation v. Mayo Foundation for Medical Education and Research*, 851 F.3d 800, 804 (8th Cir. 2017).

H&M contends that Lizama's claims fail because it never made a misrepresentation of fact regarding its conscious choice collection,  an essential element of Lizama's consumer fraud claims under the MMPA, as well as the common law claims for unjust enrichment, negligent misrepresentation, and fraud.

As alleged in the complaint, Lizama purchased an "H&M Conscious Choice Collection Knit Sweater Turquoise" from an H&M store in St. Louis, Missouri after he "saw the labeling, advertising, [H&M's] website, and read the packaging" of the

conscious choice products.  ECF 1, ¶¶ 14, 16.  Lizama alleges that H&M's conscious

choice collection misleads consumers by making the following statements:

- "The shortcut to more sustainable shopping."

- "You can identify our most environmentally sustainable products by looking out for our green Conscious hangtags."

- "[P]ieces created with a little extra consideration for the planet. Each Conscious choice product contains at least 50% of more sustainable materials – like organic cotton or recycled polyester – but many contain a lot more than that. The only exception is recycled cotton, where we accept a level of at least 20%."

- "With new technological solutions and innovations, we're continually working to make our range even more sustainable."

ECF 1 at ¶¶ 29–34.  These allegedly false and/or misleading statements are taken

from the Sustainability section of H&M's website, which H&M has provided to the

Court as Lizama did not attach any of the website pages to his complaint.  ECF 8.

The Court may take judicial notice of H&M's publicly available website in

this case without converting the motion to dismiss to one for summary judgment, as

Lizama alleges that these misrepresentations come from H&M's website.  *See*

*Porous Media Corp. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (court may

consider materials that are "necessarily embraced by the pleadings" on 12(b)(6)

motion to dismiss without converting it to one for summary judgment); *S&H Distribution, LLC v. Meyer Laboratory, Inc.*, 2022 WL 5255323, at *3 (D. Neb. Oct. 6, 2022) (when complaint alleges contents of website are misleading, the complaint necessarily embraces the website and the Court can consider contents when deciding a motion to dismiss).  The Sustainability website pages are included in includes Exhibits 1-8 of Document 8 filed by H&M.  ECF 8.

Lizama's motion to strike these exhibits [15] is denied as the Court is not constrained to accept Lizama's allegations about what the website says and may instead consider the content of the website in its the entirety when determining whether any false statements were made. *See id.*  Lizama's motion to strike Exhibits 10 and 11 is denied for the same reason, as Lizama's complaint repeatedly cites these two exhibits: the report entitled the Changing Markets Foundation, *Synthetics Anonymous: Fashion Brands' Addiction to Fossil Fuels Report*) (Exhibit 10); and, the FTC's Green Guides (Exhibit 11).  ECF 1 at ¶¶ 24-27 and 40-44.  The motion to strike is denied as moot with respect to Exhibit 9, which the Court has not considered in deciding this motion.

In addition to the statements from the website, the complaint also includes an image of a green conscious choice clothing hangtag which states "59% Recycled polyester" as part of H&M's alleged misrepresentations.  ECF 1 at ¶ 32.  Finally, the complaint includes a screenshot of H&M's conscious choice marketing

campaign which shows models surrounded by greenery.  ECF 1 at ⁋ 33.

Lizama alleges that through these marketing materials H&M misleads consumers into thinking these are "'green' products, which are known to be more sustainable and environmentally friendly."   ECF 1 at ⁋ 35.  Lizama alleges that "they are not made from sustainable and environment [sic] friendly materials that are less harmful and more beneficial to the environment." ECF 1 at  ⁋ 35.  Lizama alleges that the conscious choice collection is not more sustainable because it "actually contains a higher percentage of synthetics that [sic] its main collection." ECF 1 at ⁋ 44.  Lizama also asserts that recycled polyester is not a "more sustainable material," asserting that using recycled polyester for clothing is "a one-way ticket to a landfill, incineration or being dumped in nature."  ECF 1 at ⁋ 41. Lizama alleges that the "reasonable consumer" believes "sustainable" to mean that garments are "made from sustainable and environment [sic] friendly materials that are less harmful and more beneficial to the environment."  ECF 1 at ⁋ 37. According to Lizama, H&M's conscious choice collection is not "less harmful and more beneficial to the environment."

Lizama's claims all depend upon his allegations that H&M's representations about the conscious choice line are deceptive and misleading.  In Counts I-V, Lizama seeks relief under the MMPA, which prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."[1]   Mo. Rev. Stat. § 407.020.1.  To prevail on a claim under the MMPA, Lizama must allege that he (1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of defendant's use of one of the methods, acts or practices declared unlawful by the Act.  Mo. Rev. Stat. § 407.025.1.  The "falsity" or "misrepresentation" element is also required in Lizama's other claims for fraud, negligent misrepresentation and unjust enrichment.[2]  *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 134 (Mo. 2010) (negligent misrepresentation requires showing that information supplied is false); *Velder v. Cornerstone Nat'l Ins. Co.*, 243 S.W.3d 512, 517 (Mo. Ct. App. 2008) (same for fraud); *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct.

---

[1] Count I alleges deception under the MMPA, Count II alleges misrepresentation, Count III alleges concealment or omission of any material fact, Count IV claims H&M violated the MMPA with half-truths, and Count V alleges an unfair practice.  These terms are not defined by the statute.  The Missouri Attorney General administers and enforces the MMPA and has promulgated rules related to its enforcement.  These rules appear in Missouri's Code of State Regulations and specify the meaning of certain terms used in the enforcement of the Act.  *See, e.g.,* 15 CSR 60-8.010 et seq., and 15 CSR 60-9.010 et seq.

[2] Although Lizama does not allege violations of Missouri common law in his complaint, he and H&M cite Missouri law in their briefs.  The Court will apply Missouri law to Lizama's claims relating to a sale of goods in Missouri to a Missouri resident.

App. 2009) (unjust enrichment requires showing it would be unjust to allow defendant to retain benefit).

Claims under the MMPA are governed by the "reasonable consumer" test. *See Hess v. Chase Manhattan Bank, U.S.A*., N.A., 220 S.W.3d 758, 773 (Mo. banc 2007). If a plaintiff cannot establish that a "reasonable consumer" would be misled, dismissal as a matter of law is warranted. Mo. Rev. Stat. § 407.025.1(2).

Before turning to the statements H&M actually made, it is important to note the statements it did *not* make. Despite Lizama's repeated use of the phrase "environmentally friendly" in the complaint, H&M never actually claims that its conscious choice collection items are "environmentally friendly." Although Lizama avoids sanctionable conduct by not placing this phrase in quotes, his repeated use of the phrase directly after other quoted phrases is misleading, to say the least, particularly where he continually urges the Court to deny dismissal of the complaint because H&M falsely represents that its products are environmentally friendly. Because H&M never uses the phrase "environmentally friendly" in its marketing, the Court does not consider that phrase in its determination of whether Lizama's claims survive dismissal.[3]

---

[3] H&M actually tells its consumers the opposite: that "fashion . . . has a huge impact on the environment" and that "the only trends worth following [are] recycling and repairing" clothes. ECF 8-1 at 2, 8-3 at 2. Given these and other disclosures on H&M's website, a reasonable consumer would not be misled into thinking that purchasing any new article of clothing (even from the conscious choice line) was "environmentally friendly" and might instead heed H&M's

In a similar vein, despite the complaint's allegations that H&M's conscious choice "labeling and advertising were false, misleading, and deceptive" by tricking consumers into thinking the "the Products are more sustainable," ECF 1 at ⁋ 38, H&M does not represent that its products are "sustainable" or even "more sustainable" than its competitors'. Rather, H&M states that its conscious choice garments contain "more sustainable materials" and that the line includes "its most sustainable products." No reasonable consumer would understand this representation to mean that the conscious choice clothing line is inherently "sustainable" or that H&M's clothing is "environmentally friendly" when neither of those representations were ever made. Instead, the only reasonable reading of H&M's advertisements is that the conscious choice collection uses materials that are more sustainable than its regular materials. Lizama's claims of consumer deception based on statements that H&M never made must be dismissed for failure to state a claim.

Lizama does not contend that H&M's representation on the hangtag shown in the complaint, which states that the garment is made from "59% Recycled polyester," is untrue. Nor does Lizama contend that conscious choice products do not actually contain at least 50% of more of materials such as recycled polyester,

---

advice to rewear and take care of existing garments to avoid "a one-way ticket to a landfill, incineration or being dumped in nature." *See* ECF 8-3 at 2.

or at least 20% in the case of organic cotton.  Instead, Lizama alleges that clothing

comprised of recycled polyester is not "more sustainable" because it is primarily

sourced from recycled polyethylene terephthalate ("PET") bottles.  ECF 1 at ¶ 41.

According to Lizama, unlike the "bottle-to-bottle" recycling of PET plastics, which

can be done "many times if [the bottles] are part of clean, separated waste

streams[,]" turning PET plastics into clothing is "a one-way ticket to a landfill,

incineration or being dumped in nature."  *Id.*

Even if the Court accepts these allegations about recycling as true for

purposes of this motion only, the Court need not accept the allegation that a

reasonable consumer would compare conscious choice clothing made from

recycled polyester to PET bottles when evaluating whether recycled polyester is a

"more sustainable material" as it is not plausible on its face.   Instead, the relevant

comparison is whether one garment using recycled polyester is more sustainable

than another garment using non-recycled (also known as virgin) polyester.

Lizama's allegations fail to meet the plausibility standard in this case

because H&M provides consumers with copious amounts of information about the

relevant comparison between recycled versus virgin polyester on its website, which

Lizama alleges that he reviewed prior to purchasing his conscious choice clothing.

*See* ECF 8-6 ( H&M Group, *Sustainability Disclosure*, 34 (2001) ("2021

Sustainability Disclosure") (according to the Higg Materials Sustainability Index,

recycled polyester has a significantly lower carbon footprint than polyester from conventional sources)); ECF 8-4 ("H&M Sustainability Page - Let's Innovate") (using recycled polyester keeps plastic waste out of landfills and the natural environment; reuses a material that has already been produced; and can be recycled to make other products like insulation materials).  H&M disclosed on its website all of the information Lizama needed to determine the source, composition, and relevant comparison of the "more sustainable materials" used by H&M in its conscious choice collection.  For this reason, Lizama's claims that he was misled into believing something that was never represented by H&M must fail.

Nor can Lizama salvage his claim by alleging that the conscious choice collection is not more sustainable because it "actually contains a higher percentage of synthetics than [sic] its main collection." ECF 1 at ⁋ 44 (citing to Changing Markets Foundation, *Synthetics Anonymous: Fashion Brands' Addiction to Fossil Fuels Report* 50 (2021).  This allegation is not presumed true because the report it cites for support actually states that the overall amount of *virgin* synthetics in the conscious choice collection is *less* than H&M's main collection (48% versus 59%).  ECF 8-9 at 27.   Although the report groups virgin synthetics with recycled synthetics and calls them all "synthetics," it makes quite clear that the conscious choice collection uses more "synthetics" overall because it includes recycled polyester in this number.  *Id.*  The report actually states that "recycled polyester is

the main reason why H&M's Conscious Collection has a higher percentage of synthetics than its main collection." *Id.* A reasonable consumer who reviewed this report would be informed that H&M's conscious choice collection in fact contains "more sustainable materials" of recycled polyester than its main collection which uses more virgin polyester, which is exactly what H&M represents in its marketing materials. As neither Lizama nor this report contend that recycled polyester is not a "more sustainable material" than virgin polyester, there is no basis for the reasonable consumer to be misled about the materials used by H&M in its conscious choice collection or its relative sustainability in comparison to virgin polyester.

As a result, the complaint fails to set forth cognizable claims under these consumer deception statutes and must be dismissed.

Count III seeks to set forth a distinct MMPA violation based upon omission rather than misrepresentation. An omission under the MMPA is actionable when there is a "failure by a person to disclose material facts known to him/her." 15 CSR § 60-9110. While admitting that he reviewed H&M's website, Lizama professes ignorance as to the material composition of the items in the conscious choice clothing and/or whether such materials are "more sustainable" than comparable garments using ordinary materials. ECF 1 at ¶¶ 15, 17, 19, 53. This assertion is belied by the context and content on H&M's hangtags and website, as

well as the numerous other publicly available reports referenced in the complaint.

The complaint contains an image of a conscious choice hangtag identifying the composition of a garment[4] as containing 59% recycled polyester.  ECF 1 at ⁋ 32.  Lizama does not contend that this garment does not actually contain 59% recycled polyester.  Moreover, H&M's garments are accompanied by list of the materials used:

> We believe that being transparent is an important part of becoming more sustainable. Sharing knowledge about our business and how we make our clothes gives you more power as a customer. The more you know, the more informed decisions you can make. We want you to feel confident that the products you buy from us are made both responsibly and sustainably. When you click on an H&M product, you can find out which materials the product is made from, which countries it was produced in, and which suppliers and factories we partnered with to make it. You can find all this, as well as information on how to recycle your clothes, in our Product Background section on the product's page. The only exception is products made before our tracking system was developed.

ECF 8-2 at 2 ("H&M Sustainability Page – Let's Be Transparent")).  Lizama does not contend that he was unable to determine the composition of materials used to make the sweater he purchased, nor does he allege that the actual composition differs from the representation made by H&M.  As all consumers have the ability to determine the composition of each garment offered for sale by H&M, any claim based on the alleged omission of the composition of conscious choice garments must fail.

---

[4] Lizama does not actually allege that this hangtag was attached to the garment he purchased.

As to the "true nature of the clothing's materials," H&M specifically tells consumers why certain materials are preferable to others, and the environmental impacts of each.  H&M's publicly available Material Categorization Report compares materials within a material family (i.e., recycled polyester versus virgin polyester) and explains how and why H&M prioritizes certain materials, including recycled polyester.  ECF 8-7 (citing *H&M Group Material Categorisation* 3–4 (2021).  As Lizama also acknowledges in his complaint, data regarding the environmental impacts of utilizing recycled polyester is widely available and readily accessible.  *See* ECF 1 at ¶¶ 40–41, fn. 12, 13 (citing articles).  Thus, reasonable consumers can ascertain the exact materials used in their garments before purchase, review H&M's discussion of the environmental impacts of those materials, and then independently verify whether these representations are consistent with other, publicly available data.  Lizama has failed to identify any material facts regarding the composition or environmental impact of H&M's conscious choice materials that are not already known to the reasonable consumer prior to purchase. Without an actionable omission by H&M, Count III fails and must be dismissed.[5]

Count V alleges that H&M's alleged misrepresentations constitute an "unfair

---

[5] To the extent Lizama alleges that H&M failed to disclose that their conscious choice collection was not "environmentally friendly" or "sustainable," the claim fails for the reasons already discussed.

practice" under the MMPA because they violate the Federal Trade Commission's

("FTC") Guides for the Use of Environmental Marketing Claims ("Green

Guides"), which are "administrative interpretations" issued by the FTC "to help

marketers avoid deceptive environmental claims under Section 5 of the FTC Act."

ECF 8-11 at 9.  The Missouri Attorney General's interpretative regulation 15 CSR

60-8.020 defines an "unfair practice" under the MMPA to include a practice which

"offends any public policy as it has been established . . . by the Federal Trade

Commission, or its interpretive decisions . . . ."  15 CSR 60-8.020(1)(A).  Although

neither party has cited any caselaw applying the Green Guides to determine

whether a marketing campaign constitutes an "unfair practice" under the MMPA,

the Court assumes, without deciding, that they apply.

Lizama alleges that H&M's representations violate the Green Guides

because they imply environmental benefits that do not exist.  The Green Guides

prohibit marketers from stating or implying "environmental benefits if the benefits

are negligible" and "[u]nqualified general environmental benefit claims" without

"clear and prominent qualifying language that limits the claim to a specific benefit

or benefits."  16 C.F.R. §§ 260.3(c), 260.4(b).  Here, H&M has not made any

unqualified environmental benefit claims.  *See* 16 C.F.R. § 260.4 (c) ("[m]arketers

can qualify general environmental benefit claims to prevent deception about the

nature of the environmental benefit being asserted.")   Rather than representing the

conscious choice collection is unconditionally sustainable, it has clearly qualified its use of such terms, explaining that its conscious choice items are made with "a little extra consideration for the planet" because they use "more sustainable materials" than its regular collection.  H&M's statement that that "[e]ach Conscious Choice product contains at least 50% more sustainable materials – like organic cotton or recycled polyester" is not deceptive because those percentages are accurate and it is uncontested that the use of those materials is more environmentally beneficial than the use of virgin or non-organic counterparts.

Nor has H&M run afoul of the FTC's admonishment not to overstate an environmental attribute or benefit by "imply[ing] environmental benefits if the benefits are negligible." 16 C.F.R. § 260.3(c).  Garments are only included in H&M's conscious choice collection if the *majority* of their materials are "more sustainable."  H&M has clearly defined the basis for its "more sustainable materials" representation by specifically identifying the proportion of those "more sustainable materials" used in each garment – such as "59% Recycled polyester," *see* ECF 1 ¶ 32 – and explaining why certain materials are preferable to others as well as the environmental impacts of each.  As H&M has substantiated and qualified its representations with respect to the conscious choice clothing line, the complaint fails to allege a violation of the Green Guides.  Count V is dismissed.

Lizama's common law claims (Count IX for unjust enrichment, Count X for

negligent misrepresentation, and Count XI for fraud) are based on the same allegations of consumer deception, and also require a misrepresentation to be actionable.  *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 134 (Mo. 2010) (negligent misrepresentation requires showing that information supplied is false); *Velder v. Cornerstone Nat'l Ins. Co.*, 243 S.W.3d 512, 517 (Mo. Ct. App. 2008) (same for fraud); *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) (unjust enrichment requires showing it would be unjust to allow defendant to retain benefit).  Accordingly, they must be dismissed for the reasons set out above.  As Lizama has failed to establish that H&M's representations were not factually accurate Counts X and XI must be dismissed.  Lizama's claim for unjust enrichment in Count IX is based on the same nonactionable conduct as his statutory claims and is therefore also dismissed.  *See Carter v. Alcon Labs., Inc*., 2014 WL 989002, at *5 (E.D. Mo. Mar. 13, 2014) (dismissing unjust enrichment claim because it was based on the same underlying conduct as the nonactionable MMPA claim); *Binkley v. Am. Equity Mortg., Inc*., 447 S.W.3d 194, 196 (Mo. banc 2014) (same).

## <u>Conclusion</u>

Because I am dismissing the complaint for the reasons stated, I need not, and therefore do not, consider the alternative arguments of H&M in support of

dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that the amended motion to dismiss and/or strike [28] is granted in part only as set out above, and plaintiff Mark Doten's claims are dismissed for lack of personal jurisdiction, and plaintiff Abraham Lizama's claims are dismissed for failure to state claims against defendant.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike [15] is denied in part and denied as moot in part as set out above.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 12th day of May, 2023.